# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-3163WA

_____

Robert K. Haley,

        Appellant,

v.

Larry G. Massanari, Acting
Commissioner, Social Security
Administration,[1]

        Appellee.

\*
\*
\*
\*
\*  On Appeal from the United
\*  States District Court
\*  for the Western District
\*  of Arkansas.
\*
\*
\*
\*

_____

Submitted: May 31, 2001
Filed: August 2, 2001

_____

Before MORRIS SHEPPARD ARNOLD, RICHARD S. ARNOLD, and FAGG,
    Circuit Judges.

_____

RICHARD S. ARNOLD, Circuit Judge.

---

[1]On March 29, 2001, the President designated Larry G. Massanari as Acting
Commissioner of the Social Security Administration. Accordingly, he is substituted as
party appellee in place of Kenneth S. Apfel. See Fed. R. App. P. 43(c)(2).

Robert K. Haley[2] appeals the District Court's[3] affirmance of the decision by the Commissioner of the Social Security Administration to deny his applications for Social Security disability benefits.  We affirm.

## I.

There are two applications for Social Security disability benefits to consider. Initially, Mr. Haley applied for disability benefits in 1990 due to a back injury he sustained on the job in 1989.  Before filing this application, Mr. Haley worked as a field technician and construction worker for Northern Telecom.  After his application was denied initially and on reconsideration, he requested a hearing before an administrative law judge (ALJ).

At the time of the hearing in 1991, he was 40 years old with a GED and some training in welding.  He testified he had always worked in construction.  At his prior employment, he put in, wired down, and moved equipment.  Most of his time was spent standing, wiring, or lifting.  He stated his previous job required very heavy lifting:  he hurt his back lifting a 450 pound frame.  On a scale of one to ten he rated his constant back pain between five and nine.  He testified that two to four times a week he suffered chest pain caused by the pain in his back.  Mr. Haley stated that raising too quickly from a bending position would result in numbness in his legs, and, if he moved the wrong way, pain would shoot from his shoulders down through his legs.  He testified that he slept only five hours a night — rising two to three times because of the pain.

---

[2]Mr. Haley died in 1999 from a medical condition unrelated to the alleged medical impairments discussed below.  His representative pursues this claim on his behalf.

[3]The Hon. H. Franklin Waters, United States District Judge for the Western District of Arkansas.

His hands swelled a couple times a week on account of the pain in his back, but the swelling did not interfere with his ability to grasp objects.

Mr. Haley testified that he could stand for approximately 15 to 20 minutes while washing dishes, but he estimated he could stand two to three hours if he was working. He could sit absolutely still for five minutes, but otherwise he could sit for one hour. He could walk one city block before he would have to sit or lie down, and he could lift 20 pounds frequently but not for eight hours a day. He also stated he had difficulty reaching and stooping. He did not take prescription medication because he did not believe in taking drugs. For the pain he took aspirin, Ibuprofen, and Alka-seltzer and used Ben-Gay. Mr. Haley also claimed he suffered from depression. The inability to do the things he used to do depressed him. He also stated he had trouble concentrating and he had very little memory.

As to his daily activities, Mr. Haley testified that he participated in the construction of his home. About four days a month he hung sheet rock in his home, although it took him hours to hang one piece. He said his family and friends did the heavy work. He also stated that he painted, cooked, washed dishes, vacuumed, laundered clothes, completed yard work, fished, visited friends, drove a car, took care of personal needs, shopped, and rode a stationary bike for about 45 minutes a day.

The medical evidence was inconclusive as to the source of intensity of Mr. Haley's pain. We need not state the evidence at this first hearing in detail. It is sufficient to say that Dr. Thomas Knox, an orthopedic surgeon, examined Mr. Haley and informed his employer that he was not disabled. Dr. David J. Fachting, a chiropractor, thought the claimant was incapable of performing his past work, but that he could do other work with restrictions. Dr. Tammy Berke, a psychologist who administered the Minnesota Multiphasic Personality Inventory (MMPI), found no problems with Mr. Haley's concentration or memory. Dr. Berke thought the claimant was anxious, restless, and feeling down, but not clinically depressed.

The ALJ found that the claimant was not disabled. Using the factors set forth in Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984) (subsequent history omitted), the ALJ found that the claimant's subjective complaints of pain were unsupported by the medical evidence. No doctor had declared the claimant disabled, and his treatment history was insignificant. Moreover, his current level of daily activity was not substantially different from his pattern of daily living before the 1989 injury. The ALJ determined that the claimant retained the residual functional capacity to engage in his past relevant work. On review, in 1993, the District Court remanded the case for further findings with respect to the claimant's past relevant work.

In January of 1995, Mr. Haley filed a new application for disability benefits, alleging he was disabled due to back pain and depression. The application was denied through the reconsideration stage, and he requested an administrative hearing. Subsequently, a hearing was held on both the 1990 and 1995 applications.

At the hearing in July of 1995, Mr. Haley testified that he had not worked since December of 1989. He stated that he had been receiving long-term disability-insurance benefits from his employer. Mr. Haley also claimed that his condition had degenerated since 1990. He complained of back spasms that occurred two to three times a week and lasted from 15 minutes to an hour. In order to gain relief from the spasms he had to stretch, jump, lie on the floor, or get in the whirlpool. He stated that on a scale of one to ten, the constant pain was between six and eight. The pain interfered with his ability to concentrate and to sleep. He suffered pain from bending, sitting, rising from sitting, standing, walking, lying, coughing, sneezing, twisting, lifting, and washing himself. Out of the 24 hours in a day he would lie down for 14, sit for six, and walk for two. He could sit or stand for a half an hour, but he could not walk for even 15 minutes before he would become dizzy, his heart would race, and he would have to sit down.

His medication included Cataflam, Naproxen, Soma, Ibuprofen, Buspar, and Talwin. Mr. Haley stated that the Ibuprofen caused him stomach problems. After taking the medication, Mr. Haley stated that the pain was a minimum of six and a maximum of ten. The record also indicates he underwent osteopathic manipulation one to two times a week, and received lidocaine trigger point injections. He also stated that he was admitted to the emergency room on at least three occasions in the last few years because he took too much medicine and hyperventilated.

The claimant testified that he no longer worked in the yard, and, although he still did some of the cooking, his wife did most of the housecleaning. However, in a Social Security disability supplemental interview outline completed in June of 1995, Mr. Haley stated that he washed dishes, changed sheets, vacuumed, completed home repairs, washed cars, prepared meals, and mowed the lawn. He also testified at the hearing that he drove his car, although he could not drive more than 30 miles without his legs going to sleep. He exercised every day and estimated that he could lift 30 pounds infrequently and 20 pounds frequently. He also claimed that his depression had worsened since 1990. He felt worthless, he did not eat regularly, and he had lost weight. He also claimed that five years ago he attempted suicide by cutting his wrists,[4] and that he still entertained suicidal thoughts.

Witnesses on Mr. Haley's behalf included his wife and his parents. Mrs. Haley testified that Mr. Haley often cried for no apparent reason and that she saw the painful expression on his face when he attempted to pick up something. She also claimed that he was irritable, and that their sex life was not the same. Likewise, Mr. Haley's parents submitted a letter stating that he was in a great deal of pain. The letter also stated that

---

[4]A 1991 emergency room report indicated that Mr. Haley was admitted with complaints of a red streak up his arm. The report also noted that there was a week-old razor cut to his left hand. However, there is no other medical evidence regarding the alleged suicide attempt.

Mr. Haley was depressed because he was unable do the things he used to enjoy doing. Although a vocational expert was present at the hearing, he did not testify.[5]

The following medical evidence was produced in support of Mr. Haley's claim. In 1993 Mr. Haley saw Dr. Roger Hockenberry, D.N., who diagnosed him with degenerative disc disease, spasticity, inflaming nerve pain, and an aggravating sacral nerve in his leg. Dr. Hockenberry reported that degenerative connective tissue damage resulted in back, shoulder, and arm pain that restricted the movement of Mr. Haley's arms and neck, diminished his strength, and highly limited long physical activity. Dr. Hockenberry determined that Mr. Haley was unable to perform manual labor, but he could perform light work.

Dr. Merl Cox, a chiropractor, determined that the claimant had tension in his shoulder muscles, and that he was sensitive to touch and motion testing throughout the spine. According to Dr. Cox, such findings were consistent with soft-tissue injury and Mr. Haley's complaints of pain. Dr. Cox also noted that Mr. Haley suffered from depression. In a letter dated January 13, 1995, Dr. Cox stated that Mr. Haley was permanently disabled. However, in follow-up correspondence dated February 27, 1995, he stated that his earlier determination of disability was made upon the basis of palpatory findings and Mr. Haley's subjective complaints and not on strength or endurance testing. Nonetheless, in a letter to Mr. Haley's long term disability insurance company dated May 23, 1995, Dr. Cox stated that in his professional opinion Mr. Haley's symptoms were more than just subjective, and that he believed Mr. Haley was disabled. X-rays taken in August of 1995, were unremarkable.

In August of 1995, at the behest of the Social Security Administration, Dr. Stephen Harris completed a psychological evaluation of Mr. Haley and administered

---

[5]It seems that the vocational expert did not testify because he had not reviewed a detailed questionnaire completed by Mr. Haley regarding his prior employment.

a second MMPI. According to Dr. Harris's test results, Mr. Haley was a slow learner and showed some deficits in social reasoning and long-term visual memory processing. His MMPI profile indicated functional pain, fatigue, pre-occupation with bodily functions, touchiness, oversensitivity, and egocentricity. Dr. Harris also observed that Mr. Haley's profile was similar to someone "who may have some psychiatric difficulties who focuses a good bit of his psychiatric problems upon physical complaints and therefore reacts quite poorly to stress related situations." Administrative Record (AR) 370. Overall, Dr. Harris concluded that Mr. Haley had a fair to good ability to make occupational, performance, and personal-social adjustments within the workplace.

The ALJ[6] determined that Mr. Haley had a severe impairment, but nothing equal to a listed one. The ALJ discounted Mr. Haley's subjective claims of pain for the following reasons: he washed dishes, changed sheets, vacuumed, washed cars, shopped, cooked, paid bills, drove a car, attended church, watched television, listened to the radio, visited friends, and read; he spent time building his home, and there was evidence that he refused to follow through with prescribed treatment and cancelled appointments.

Furthermore, the ALJ found that Mr. Haley's alleged mental impairment did not limit his daily activities, affect his concentration, persistence, or pace, or result in episodes of deterioration. The ALJ noted a slight impairment in Mr. Haley's ability to maintain social functioning. He concluded that Mr. Haley was unable to perform his past relevant work, but that he could perform a range of light or sedentary jobs in the national economy and therefore he was not disabled within the meaning of the SSA.

Mr. Haley appealed the ALJ's decision to the Appeals Council, which denied review. The District Court, which affirmed, found substantial evidence in the record to support the Commissioner's decision. Mr. Haley then filed this appeal.

---

[6]The Hon. Robert L. Neighbors.

II.

On appeal, the claimant asserts the following errors: (1) the ALJ used the Medical-Vocational Guidelines ("vocational grids") to determine disability instead of a vocational expert, even though the claimant had a nonexertional impairment; (2) the ALJ determined that Mr. Haley had the residual functional capacity to perform a full range of light work, where the evidence showed he had severe mental and physical impairments; and (3) the ALJ did not send Mr. Haley for a further consultative examination once he disbelieved objective evidence of back spasms and the diagnosis of the claimant's treating physicians and consultative psychologist.

"We will affirm the ALJ's findings if supported by substantial evidence on the record as a whole." Beckley v. Apfel, 152 F.3d 1056, 1059 (8th Cir. 1998). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." Id. However, our review "is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision, we also take into account whatever in the record fairly detracts from that decision." Id. Nevertheless, as long as there is substantial evidence in the record to support the Commissioner's decision, we will not reverse it simply because substantial evidence exists in the record that would have supported a different outcome, Shannon v. Chater, 54 F.3d 484, 486 (8th Cir. 1995), or "because we would have decided the case differently." Holley v. Massanari, No. 00-2357, 2001 WL 668592, at *2 (8th Cir. June 15, 2001).

To acquire Social Security disability benefits, initially the claimant has the burden of showing "that [he] is unable to perform [his] past relevant work." Beckley, 152 F.3d at 1059. If the claimant carries his burden, "the burden of proof then shifts to the Commissioner to demonstrate that the claimant retains the physical residual functional capacity to perform a significant number of other jobs in the national

economy that are consistent with the claimant's impairments and with vocational factors such as age, education, and work experience." Id.

Here, the claimant successfully carried his burden of showing that he is unable to perform his past relevant work. Thus, regarding Mr. Haley's first assignment of error, the question is whether the Commissioner carried his burden of showing that the claimant retained the physical residual functional capacity to perform light or sedentary work. To reach this issue we must address whether the ALJ erred in relying solely on the vocational grids instead of the testimony of a vocational expert. Where the claimant has a nonexertional impairment, such as pain, the ALJ may not exclusively rely on the vocational grids to determine disability but must also consider the testimony of a vocational expert. See id.; Frankl v. Shalala, 47 F.3d 935, 937 (8th Cir. 1995); O'Leary v. Schweiker, 710 F.2d 1334, 1339 (8th Cir. 1983); see 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e) (2001). However, "the ALJ may discount subjective complaints of pain if inconsistencies are apparent in the evidence as a whole." Gray v. Apfel, 192 F.3d 799, 803 (8th Cir. 1999); Reynolds v. Chater, 82 F.3d 254, 258-59 (8th Cir. 1996); Polaski, 739 F.2d at 1322. Thus, the true issue is whether the record as a whole reflects inconsistencies that discredit Mr. Haley's complaints of pain. We believe it does.

Here, the ALJ analyzed Mr. Haley's complaints using the Polaski factors, set forth credibility determinations, detailed reasons for discrediting Mr. Haley's testimony, and pointed out the inconsistencies he observed in the record. The ALJ compared Mr. Haley's statements at the 1995 hearing that he was unable to do anything and that he experienced constant moderate to severe pain with his statements in the disability supplemental interview outline that he took care of his personal needs, washed dishes, changed sheets, vacuumed, washed cars, shopped, cooked, paid bills, drove, attended church, watched television, listened to the radio, visited friends and relatives, and read. Moreover, the ALJ considered Mr. Haley's testimony at the 1991 hearing that he worked on the construction of his home. Inconsistencies between subjective

complaints of pain and daily living patterns diminish credibility.  See Shannon, 54 F.3d at 487 (holding claimant's complaints of unbearable knee pain inconsistent with statements that he cooked breakfast, cleaned house, performed other chores, visited friends and relatives, and attended church at least twice a month).  The ALJ also pointed to evidence that Mr. Haley refused to follow through with his prescribed treatment and cancelled appointments.  See Benskin v. Bowen, 830 F.2d 878, 884 (8th Cir. 1987) (ALJ could properly find claimant's "failure to seek professional relief for her pain inconsistent with her account of its severity").  Moreover, neither Dr. Sward nor Dr. Knox could discover the source of Mr. Haley's complaints of disabling pain.

There is evidence in the record that Mr. Haley suffered some pain.  Dr. Hockenberry diagnosed Mr. Haley with inflaming nerve hyperthesia (pain) and Dr. Cox opined that his medical findings were consistent with Mr. Haley's complaints of pain.  However, " 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence,' "  Browning v. Sullivan, 958 F.2d 817, 821 (8th Cir. 1992) (quoting Cruse v. Bowen, 867 F.2d 1183, 1184 (8th Cir. 1989)).  What is more, even with his diagnosis of inflaming nerve hyperthesia, Dr. Hockenberry thought that Mr. Haley could perform light work.  Therefore, the ALJ properly discredited Mr. Haley's complaints of disabling pain, and the use of the vocational grids was not error.

Next, Mr. Haley argues that the ALJ erred in determining that he had the residual functional capacity to perform a full range of light or sedentary work.[7]  We disagree.

_____

[7]Sedentary and light work are defined in 20 C.F.R. § 404.1567, which provides:

a) Sedentary work.  Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and

In a questionnaire completed in June of 1995, the claimant stated that he could sit or stand one to two hours continuously. He stated that in a work situation he could lift, infrequently or less than about one-third of the day, 30 pounds. A vocational expert testified at Mr. Haley's 1991 hearing that he had transferable skills from his prior job that could be used in light or sedentary jobs. The record reflects that Mr. Haley performed a broad range of daily activities, and although Dr. Cox said that he was permanently disabled, Dr. Knox thought he was not. What is more, both Dr. Fachting and Dr. Hockenberry opined that Mr. Haley could perform light work. Likewise, medical tests were generally unremarkable, and Dr. Knox could not find an organic origin for Mr. Haley's complaints of severe pain.

Similarly, the record supports the ALJ's findings regarding allegations of a mental impairment. The evidence fails to reflect any significant emotional symptoms. Although the claimant alleges that he attempted to commit suicide by cutting his wrists, and he went to a doctor to be sewn up, there is no documentation in the record of this doctor visit or of any ongoing psychological treatment. Moreover, there is no indication in the record that any alleged mental impairment interfered with the claimant's ability to function in daily life. Dr. Harris concluded that Mr. Haley had a

---

standing are required occasionally and other sedentary criteria are met.

(b) Light work. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

fair to good ability to make occupational, performance, and personal-social adjustments within the workplace.

Finally, the claimant argues that the ALJ erred in not sending him for a further consultative examination. We disagree. It is true that an ALJ has a duty to develop the record fully. See McGhee v. Harris, 683 F.2d 256, 260 (8th Cir. 1982) (ALJ's admonition of unrepresented claimant for interrupting vocational expert required him to direct specific questions toward the claimant in order to make sure she understood the line of questioning and to ensure that the record was fully developed). " 'It is reversible error for an ALJ not to order a consultative examination when such an evaluation is necessary for him to make an informed decision. ' " Boyd v. Sullivan, 960 F.2d 733, 736 (8th Cir. 1992) (quoting Reeves v. Heckler, 734 F.2d 519, 522 n.1 (11th Cir.1984)); see also 20 C.F.R. § 404.1519a (2001).

Here, there was substantial evidence in the record to allow the ALJ to make an informed decision. There were numerous medical reports from treating physicians, consulting physicians, and psychologists spanning a six-year period. There were results from medical tests conducted by Mr. Haley's treating physicians. There were disability reports, supplemental disability outlines, and questionnaires completed by Mr. Haley. What is more, there were transcripts from two hearings in which the claimant was questioned by both the ALJ and his attorney. The record contained substantial evidence to support the ALJ's decision. See Anderson v. Shalala, 51 F.3d 777, 779 (8th Cir. 1995) (" '[A]n ALJ is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision.' ") (quoting Naber v. Shalala, 22 F.3d 186, 189 (8th Cir. 1994)). Furthermore, " 'reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial.' " Shannon, 54 F.3d 484, 488 (quoting Onstad v. Shalala, 999 F.2d 1232, 1234 (8th Cir. 1993)). Mr. Haley has made no such showing. Therefore, the ALJ did not err in failing to send the claimant for a consultative examination.

III.

For the foregoing reasons, the judgment of the District Court is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.