**Robert L. BROWN, Plaintiff**

v.

**Jo Anne B. BARNHART, Commissioner of Social Security, Defendant**

**No. 01–291–P–C.**

United States District Court, D. Maine.

Dec. 23, 2002.

Thomas S. Carey, Carey & Associates, Rumford, ME, for Robert L. Brown, plaintiff.

James M. Moore, U.S. Attorney's Office, Bangor, ME, Karen Burzycki, Assistant Regional Counsel, Office of the Chief Counsel, Boston, MA, for Social Security Administration Commissioner, defendant.

## ORDER AFFIRMING THE REPORT AND RECOMMENDED DECISION OF THE MAGISTRATE JUDGE

GENE CARTER, District Judge.

The United States Magistrate Judge having filed with the Court on November 20, 2002, with copies to counsel, his Report and Recommended Decision (Docket Item

No. 9) in the above-entitled matter; and the time for filing objections thereto having expired without any objections having been filed; *see* 28 U.S.C. § 636(b)(1); and this Court having reviewed and considered the Magistrate Judge's Report and Recommended Decision, together with the entire record; and having made a *de novo* determination of all matters adjudicated by the Magistrate Judge's Report and Recommended Decision; and this Court concurring with the recommendations of the United States Magistrate Judge for the reasons set forth in his Recommended Decision, and having determined that no further proceeding is necessary; it is **ORDERED** as follows:

(1) The Recommended Decision of the Magistrate Judge is hereby **AFFIRMED**.

(2) The decision of the Commissioner is hereby **VACATED**;

(3) This cause is hereby **REMANDED**; and

(4) The Commissioner is hereby **INSTRUCTED** to obtain, at the expense of the Social Security Administration, an additional consultative examination of the Plaintiff, following which the sequential-evaluation process is to be undertaken anew.

## REPORT AND RECOMMENDED DECISION [1]

DAVID M. COHEN, United States Magistrate Judge.

This Supplemental Security Income ("SSI") appeal raises the question whether substantial evidence supports the commissioner's determination that the plaintiff, who suffers from osteoarthritis, is capable of making an adjustment to work existing in significant numbers in the national economy. I recommend that the decision of the commissioner be vacated and remanded for further proceedings.

In accordance with the commissioner's sequential evaluation process, 20 C.F.R. § 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir.1982), the administrative law judge found, in relevant part, that the plaintiff suffered from osteoarthritis, an impairment that was severe but did not meet or equal those listed in Appendix 1 to Subpart P, 20 C.F.R. § 404 (the "Listings"), Finding 2, Record at 21; that his statements concerning his impairments and their impact on his ability to work were not entirely credible in light of, *inter alia*, his own description of his activities and lifestyle, the paucity of medical evidence and the report of the examining practitioner, Finding 3, *id.*; that he lacked the residual functional capacity to lift and carry more than ten pounds and to stand or walk for prolonged periods of time, Finding 4, *id.*; that he was unable to perform his past relevant work as a flagger, laborer and shipper, Finding 5, *id.*; that his capacity for the full range of sedentary work was undiminished by nonexertional limitations, Finding 6, *id.*; that, given his age (47), education (limited), work experience (unskilled) and exertional capacity for seden-

1. This action is properly brought under 42 U.S.C. § 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on November 19, 2002, pursuant to Local Rule 16.3(a)(2)(C) requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority and page references to the administrative record.

tary work, Rule 201.18 of Table 1, Appendix 2 to Subpart P, 20 C.F.R. § 404 (the "Grid") directed a conclusion that he was not disabled, Findings 7–10, *id.;* and that he therefore had not been under a disability at any time through the date of decision, Finding 11, *id.* at 22. The Appeals Council declined to review the decision, *id.* at 3–4, making it the final determination of the commissioner, 20 C.F.R. § 416.1481; *Dupuis v. Secretary of Health & Human Servs.,* 869 F.2d 622, 623 (1st Cir.1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 1383(c)(3); *Manso–Pizarro v. Secretary of Health & Human Servs.,* 76 F.3d 15, 16 (1st Cir.1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Rodriguez v. Secretary of Health & Human Servs.,* 647 F.2d 218, 222 (1st Cir.1981).

■■■ The administrative law judge reached Step 5 of the sequential process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than his or her past relevant work. 20 C.F.R. § 416.920(f); *Bowen v. Yuckert,* 482 U.S. 137, 146 n. 5, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987); *Goodermote,* 690 F.2d at 7. The record must contain positive evidence in support of the commissioner's findings regarding the plaintiff's residual work capacity to perform such other work. *Rosado v. Secretary of Health & Human Servs.,* 807 F.2d 292, 294 (1st Cir.1986).

The plaintiff complains that the administrative law judge erred in determining that (i) his condition did not meet or equal Listing 1.03 and (ii) his residual functional capacity was such as to enable him to perform a full range of sedentary work. *See generally* Itemized Statement of Errors Pursuant to Local Rule 26, Submitted by Plaintiff ("Statement of Errors") (Docket No. 6). Both points are based in part on an alleged failure to develop the record properly. *See generally id.* I agree that in this case further development of the record is required.

## I. Discussion

The plaintiff filed an SSI application on June 28, 1999 alleging inability to work as of October 30, 1996 as a result of osteoarthritis. Record at 17. The Record contains no medical evidence whatsoever from a treating source. *Id.* at 18.[2] At hearing on January 31, 2001 the plaintiff testified that (i) he had seen two doctors in 1996 for pain in his knees, (ii) one prescribed Daypro and the other suggested he take aspirin, (iii) neither the Daypro nor the aspirin did any good, (iv) he saw a consultative examiner (John P. Greene, M.D.) in 1999, (v) since seeing Dr. Greene, he had sought no medical treatment because he had "no medical card [and] no income," (vi) he last had medical insurance in 1996 through his then-wife, (vii) although he had twice requested Medicaid application papers he had never received them, (viii) he lived with his 79–year–old mother, who supported him, and (ix) since seeing Dr. Greene his condition had worsened in that he now suffered pain in his elbow and hips as well as in his knees. *Id.* at 29, 32–34, 37–38; *see also id.* at 116–18 (report of Dr. Greene).

---

**2.** Although the claimant stated in his initial application that he had been seen at Rumford Community Hospital in 1996, *see* Record at 82, the commissioner requested records for the plaintiff dating from January 1998, *id.* at 115. Apparently no records were sent, with the hospital responding: "Patient has not been seen here since 3/3/97." *Id.* at 115.

Dr. Greene examined the plaintiff on July 29, 1999. *Id.* at 116. The plaintiff was noted to have complained of "allegedly disabling bilateral knee pain and swelling" and "some mild occasional discomfort in his left elbow area." *Id.* Examination revealed "no positive findings at this time" as to the left elbow and nothing "particularly remarkable" about either knee. *Id.* at 116–17. However, Dr. Greene did detect "some definite limitation of motion at the right hip," noting: "The patient himself does not seem to be aware of symptoms referable to the hip and only complains about his knee, but it would seem reasonable that the hip problems may very well result in pain referred to the right knee area." *Id.* at 117.

Dr. Greene ordered pelvis x-rays, which, although demonstrating "very minimal pathology," showed what appeared to be "a localized fairly good sized marginal spur at the inferior margin of the right acetabulum"[3] and "some degree of degenerative arthritic change in the right sacroiliac joint."[4] *Id.* He concluded: "The history and physical findings would suggest some degree of degenerative joint disease involving the right sacroiliac joint, the right hip joint and both knee joints. As a result of this situation, it is not considered that the patient would be a suitable candidate to work on his feet; thus, in being limited to a sitting job where required use of foot pedals was not required [sic]." *Id.*

In a request for reconsideration dated October 26, 1999 the plaintiff stated, "The consult exam made my hips worse." *Id.* at 46. In his request for hearing dated February 17, 2000 he wrote, "I am unable to work & support myself due to severe arthritis—bone—joint pain in hips & knees, cannot lift, stand in one place, nor walk very far, constant pain." *Id.* at 51; *see also, e.g., id.* at 99 (stating, on February 17, 2000, "now unable to sit comfortably for any length of time . . . . spending much more time inside & daily tasks becoming increasingly more difficult").

In March 2000 Thomas S. Carey, Esq. was appointed to represent the plaintiff. *Id.* at 53. Carey determined that an independent evaluation with a Dr. Pavlak would cost $650. *Id.* at 10. By letter dated June 8, 2000 he informed the Office of Hearings and Appeals:

> Mr. Brown believes that his condition has deteriorated substantially and now includes his back to the point where he doesn't feel that he could do seated work. This is an important part of the case. Inasmuch as it has been almost a year since he was examined by Dr. Greene, we are respectfully requesting that Mr. Brown be re-examined by Dr. Greene to determine his status at this time. We would have Mr. Brown seen privately but he has no money.

*Id.* at 11. Carey initially was erroneously informed that the plaintiff would be sent for a second consultative examination; however, he then was told in August 2000 that the administrative law judge would look at the file either prior to or at the hearing and determine whether a follow-up visit was warranted. *Id.* at 12. At hearing in January 2001 Carey again renewed

---

**3.** The acetabulum is a "cup-shapped depression on the external surface of the hip bone, with which the head of the femur articulates." Stedman's Medical Dictionary at 11 (27th ed. 2000) ("Stedman's").

**4.** The sacroiliac joint is "the synovial joint on either side between the auricular surface of the sacrum and that of the ilium[.]" Stedman's at 937. The "sacrum" is the "segment of the vertebral column forming part of the pelvis," *id.* at 1588, while the ilium is the "broad, flaring portion of the hip bone," *id.* at 875.

his request that the plaintiff be re-examined. *Id.* at 38. In his decision issued on March 26, 2001 the administrative law judge wrote, "The undersigned notes the fact that claimant's counsel requested that the undersigned send the claimant for additional consultative examination. However, the claimant has already been sent for one consultative examination, and it is the finding of the undersigned Administrative Law Judge that there is insufficient evidence to warrant additional consultative examination of the claimant." *Id.* at 18–19.

Social Security regulations provide in relevant part:

(b) *Situations requiring a consultative examination.* A consultative examination may be purchased when the evidence as a whole, both medical and nonmedical, is not sufficient to support a decision on your claim. Other situations, including but not limited to the situations listed below, will normally require a consultative examination:

\*    \*    \*    \*    \*    \*

(5) There is an indication of a change in your condition that is likely to affect your ability to work, or, if you are a child, your functioning, but the current severity of your impairment is not established.

20 C.F.R. § 416.919a(b)(5).

In addition, the First Circuit has held:

[I]f the Secretary is doubtful as to the severity of [a claimant's] disorder the appropriate course is to request a consultative examination, not to rely on the lay impressions of the ALJ. While claimant of course bears the burden of proof on the issue of disability, the Secretary nonetheless retains a certain obligation to develop an adequate record from which a reasonable conclusion can be drawn.

*Carrillo Marin v. Secretary of Health & Human Servs.*, 758 F.2d 14, 17 (1st Cir. 1985) (citations omitted); *see also, e.g., Heggarty v. Sullivan,* 947 F.2d 990, 997 (1st Cir.1991) ("In most instances, where appellant himself fails to establish a sufficient claim of disability, the Secretary need proceed no further. Due to the non-adversarial nature of disability determination proceedings, however, the Secretary has recognized that she has certain responsibilities with regard to the development of evidence and we believe this responsibility increases in cases where ... there are gaps in the evidence necessary to a reasoned evaluation of the claim, and where it is within the power of the administrative law judge, without undue effort, to see that the gaps are somewhat filled— as by ordering easily obtained further or more complete reports ....") (citation and internal quotation marks omitted); *Santiago v. Secretary of Health & Human Servs.*, 944 F.2d 1, 5–6 (1st Cir.1991) ("[A]n ALJ may not simply rely upon the failure of the claimant to *demonstrate* [that] the physical and mental demands of her past relevant work can no longer be met, but, *once alerted by the record to the presence of such an issue,* must develop the record further.") (citations and internal quotation marks omitted) (emphasis in original).

At oral argument, the plaintiff's counsel conceded that a mere subjective allegation of worsening condition, standing alone, would be insufficient to trigger the need for a second consultative examination pursuant to 20 C.F.R. § 416.919a(b)(5). However, he contended that Dr. Greene had prognosticated that the plaintiff's hip pain would progress and likely further impair his knee, and that this—coupled with the plaintiff's subjective allegations—sufficed to indicate the need for the second consultative examination. As counsel for the commissioner pointed out, Dr. Greene of-

fered no such prognosis. Record at 116–18. However, the doctor did diagnose the plaintiff as having "some degree of degenerative joint disease." *Id.* at 117. "Degenerative" means "[r]elating to degeneration." Stedman's at 468. "Degeneration," in turn, means "1. Deterioration; passing from a higher to a lower level or type. 2. A worsening of mental, physical, or moral qualities. 3. A retrogressive pathologic change in cells or tissues, in consequence of which their functions are often impaired or destroyed; sometimes reversible[.]" *Id.* at 467. The bottom line is that the plaintiff's allegations of worsening condition were, at the least, colorable in view of his diagnosis.

Counsel for the plaintiff further contended—and counsel for the commissioner did not dispute—that financial hardship is relevant to determining whether a claimant should be excused from shouldering what otherwise clearly would be his or her burden to adduce objective medical evidence of the existence (or worsening) of an impairment. However, counsel for the commissioner argued that, in this context, a claimant should be held to the same standard as excuses failure to follow prescribed medical treatment pursuant to 20 C.F.R. § 416.930(b) and Social Security Ruling 82–59: the exhaustion of all possible avenues in the community for free treatment.[5] She observed that by this standard, the plaintiff's showing (that he tried twice unsuccessfully to obtain a Medicaid form) fell short.

Although there is some superficial appeal to this contention, I decline to embrace it. The commissioner points to no authority, and I find none, importing the standards of section 416.930(b) or SSR 82–59 into this context. Moreover, the two contexts are distinguishable. The commissioner cannot readily fill an evidentiary gap in cases of failure to follow prescribed treatment, *i.e.*, by paying for a claimant's prescription medications, physical therapy or surgery. Hence, a claimant understandably is held to a stringent standard in showing that financial hardship has prevented him or her from receiving curative treatment that potentially would have rendered him or her ineligible for Social Security benefits. By contrast, in a case such as this, in which a claimant with a medically substantiated condition of a type that can worsen alleges that it has in fact worsened, the evidentiary gap easily can be filled by the ordering of one additional consultative examination. In such circumstances, the type of showing made by the plaintiff (a *bona fide* showing of financial hardship) suffices.

■ In this case the plaintiff's diagnosis, coupled with his subjective allegations and his counsel's repeated requests for a second consultative examination, sufficed to raise a question of a possibly significant deterioration in his condition—one that might affect his ability to do the full range of sedentary work. The plaintiff testified that he had no income or medical insurance with which to obtain a consultative

**5.** Section 416.930(b) provides in relevant part: "If you do not follow the prescribed treatment without a good reason, we will not find you disabled or blind or, if you are already receiving benefits, we will stop paying you benefits." Ruling 82–59 elaborates in relevant part: "Although a free or subsidized source of treatment is often available, the claim may be allowed where such treatment is not reasonably available in the local community. All possible resources (e.g., clinics, charitable and public assistance agencies, etc.), must be explored. Contacts with such resources and the claimant's financial circumstances must be documented. Where treatment is not available, the case will be referred to VR [vocational rehabilitation]." Social Security Ruling 82–59, reprinted in *West's Social Security Reporting Service* Rulings 1975–82 ("SSR 82–59"), at 796–97.

examination. There is no evidence to the contrary. Under these circumstances, "insufficient evidence" should have been the rationale for granting, rather than denying, the single requested consultation. *See, e.g., Haley v. Massanari,* 258 F.3d 742, 749 (8th Cir.2001) ("It is reversible error for an ALJ not to order a consultative examination when such an evaluation is necessary for him to make an informed decision.") (citations and internal quotation marks omitted).

## II. Conclusion

For the foregoing reasons, I recommend that the decision of the commissioner be **VACATED** and the cause **REMANDED** with instructions that the commissioner obtain, at the expense of the Social Security Administration, an additional consultative examination of the plaintiff, following which the sequential-evaluation process is to be undertaken anew.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within ten (10) days after being served with a copy thereof. A responsive memorandum shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

November 20, 2002.