258 F.Supp.2d 1013 (2003)
Randall BOYD, Plaintiff,
v.
Jo Anne B. BARNHART, Commissioner of Social Security, Defendant.
No. 4:01 CV 1857 DDN.
United States District Court, E.D. Missouri, Eastern Division.
March 26, 2003.
*1014 Charles W. Taylor, O'Fallon, MO, Philip A. Senturia, Gateway Legal Services, Inc., St. Louis, MO, for plaintiff.
Henry J. Fredericks, Assist. U.S. Atty., Office of U.S. Atty., St. louis, MO, for defendant.

MEMORANDUM
NOCE, United States Magistrate Judge.
This action is before the court for judicial review of the final decision of the defendant Commissioner of Social Security denying plaintiffs applications for disability insurance benefits under Title II of the Social Security Act (the Act), 42 U.S.C. §§ 401, et seq. The parties have consented to the exercise of jurisdiction by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Oral argument was heard on March 18, 2003.

I. BACKGROUND

A. Administrative record
On August 20, 1997, plaintiff applied for disability benefits, alleging a disability onset date of January 7, 1995. He listed two disabling conditions: congestive heart failure, and "when standing or sitting for periods of time legs swell and break out in rash." In a vocational report, plaintiff indicated that he had done (1) warehouse work at a factory from May 1991 to April 1995 (when he quit because he "could not handle the work"), (2) inspector work at a factory from February 1990 to April 1991, (3) warehouse work in a business forms company 1986 to February 1990, (4) sandblasting from 1984 to 1986, and (5) construction labor from 1983 to 1984. (Tr. at 114, 120.) The ALJ conducted a hearing on March 8, 1999, and issued a decision denying benefits on June 15, 1999. The Appeals Council declined further review on September 27, 2001.
*1015 Plaintiff was admitted to Barnes St. Peters Hospital on January 7, 1995, at age 44, complaining of abdominal pain. He had acute appendicitis and underwent surgery on January 10. Following surgery, his kidneys ceased functioning; on January 15, he was transferred to St. Joseph Health Center, where he was diagnosed with adult respiratory distress syndrome, renal (kidney) failure, and sepsis.[1] (Tr. at 166, 172-73, 230, 435.) He was treated for, inter alia, respiratory and renal failures, coagulation difficulties, possible abnormal ventricular and liver functions, generalized seizures, pancreatitis, a parietal occipital infarct, and a hemorrhage. On February 18, 1995, he was transferred to St. Louis University Hospital for a cardiac evaluation. He continued receiving dialysis and his renal function improved. He was discharged on March 6, 1995. (Tr. at 446-50, 544, 627, 1171-72.)
Plaintiff was followed on an outpatient basis at St. Louis University Health Sciences Center. On September 25, 1995, he still had severe anteroapical left ventricular hypokinesis (slow heart functioning), and a moderately calcified aortic root. On October 9, 1995, he had some lung congestion. (Tr. at 1430, 1432-33, 1443, 1446.)
In an August 1997 Disability Report, plaintiff wrote that sitting or standing caused his legs to swell and break out in a rash, that Dr. Donahue instructed him to take rest breaks when he became winded, and that he could not drive long distances. In September he indicated in a Claimant Questionnaire and supplement that he was unable to afford medications or more frequent doctor visits because he had no insurance, that resting with his feet up for two hours helped control his leg pain, that walking around a store caused him chest pain and shortness of breath, and that he walked once or twice a week for 15 to 30 minutes for exercise. (Tr. at 114, 117, 125-27.)
On September 10, 1997, Gerald A. Wolff, M.D., performed a consultative examination without the benefit of plaintiffs medical records. Plaintiff told Dr. Wolff that he suffered from chest discomfort, occasional left arm numbness, dyspnea (difficulty breathing) on walking three blocks, a dry cough, and easy fatigue. He informed the doctor that he smokes one-half to a full pack of cigarettes per day and had been doing so for 25 years. On physical examination, Dr. Wolff found that plaintiff had a clear and non-tender chest, normal heart sounds, no edema (presence of fluid), and no evidence of chronic venus insufficiency. Dr. Wolff noted that the physical examination did not reveal conditions which would prevent sitting, standing, walking, lifting, carrying, handling, hearing, speaking, and traveling. He concluded, however, that he lacked documentation or objective evidence to accurately assess plaintiffs present health status and former illnesses, that the physical examination did not reveal evidence of significant underlying disease, and that an accurate functional capacity evaluation would be possible only with adequate medical records. (Tr. at 1461-1464).
Medical consultant and pediatrician George McElroy, M.D., completed a Physical Residual Functional Capacity (RFC) Assessment on October 1, 1997. He noted plaintiffs 1995 hospitalization and renal failure and opined that plaintiff could lift and carry 50 pounds occasionally and 25 pounds frequently, stand and walk about 6 hours in an 8-hour day, and sit about 6 hours in an 8-hour day. Dr. McElroy opined that the severity and duration of plaintiffs asserted symptoms were disproportionate to that which would be expected on the basis of plaintiffs medically determinable *1016 impairments, given that plaintiff prepares meals, does some light housework, runs errands, and fishes and hunts up to twice a month. (Tr. at 1465-67, 1470.)
On January 22, 1998, plaintiff began treatment at a hospital. Heart tests showed mild septal dyskinesis, a low normal ejection function, and no evidence of ischemic or feed defect. Biopsies of his feet, from February 12, 1998, revealed vasculitis.[2] (Tr. at 1473, 1486, 1506.)
On February 23, 1998, general practitioner Donald Proctor, M.D., who had received updated information, affirmed Dr. McElroy's written RFC assessment. (Tr. at 1465.)
On March 30, 1998, plaintiff underwent neuropsychological testing. A neuropsychological evaluation on April 16, 1998, revealed mild cognitive deficits and mild to moderate depression. Plaintiff primarily complained of memory and confusion spells. Psychologist Martha Brownlee-Duffeck recommended psychiatric treatment for the depression and further monitoring of neurological symptoms such as confusion. (Tr. at 1512, 1519-21.)
CT scan results from April 24, 1998, revealed that plaintiff had calcified lymph nodes in the mediastinum, small calcifications throughout the spleen, calcified granulomas in both lungs, and a ventral hernia. (Tr. at 1532.)
At the ALJ's request, James Schutzenhofer, M.D., examined plaintiff on May 6, 1999. Dr. Schutzenhofer wrote that "[t]here are multiple records available for review," including "several psychological reports," "multiple written office notes," and an echocardiogram and a chest x-ray from January and February 1998, respectively. Plaintiffs chief complaints were heart and pulmonary problems, congestive heart failure, status post myocardial infarction, an history of history of cardiovascular accident (stroke), and hearing problems. Plaintiff reported that he (1) had chest pains weekly that were exacerbated by walking, (2) coughed and wheezed daily but continued to smoke cigarettes regularly, (3) took no pulmonary medications, and (4) had occasional swelling on his legs and occasional difficulty breathing. Dr. Schutzenhofer noted no residual deficits from the stroke and that plaintiff had "a history of some type of vasculitis involving his skin, as well as causing some proteinuria,[3] but apparently no chronic renal dysfunction." He also noted that plaintiff had a history of hearing problems, wore a left hearing aid, had occasional trouble understanding, and hoarseness. Dr. Schutzenhofer summarized plaintiffs past medical history as chest pains and history of congestive heart failure (CHF), silicosis, and hearing problems. (Tr. at 1555-57.)
On physical examination, plaintiff had a slight rash over his lower ankles; normal heart sounds; some diffuse decreased breath sounds, but no rales, rhonchi, or wheezes; a large reducible right sided abdominal wall hernia; full active and passive range of motion of all joints of the upper and lower extremities with no swelling; good grip strength bilaterally, and no evidence of muscle atrophy of the hands; a normal gait; no evidence of lower extremity peripheral edema or lesions; and good pulses. Dr. Schutzenhofer noted decreased breath sounds, chronic cough and wheezing, and exertional dyspnea. (Tr. at 1557-58.)
Dr. Schutzenhofer filled in portions of a Medical Source Statement of Ability to do Work-Related Activities (Physical). He checked a box indicating that plaintiff had an impairment affecting lifting and carrying *1017 he did not fill in blanks to indicate how many pounds plaintiff could lift and carry or how often, nor did he list the medical findings that supported his assessment. He checked a box indicating that plaintiff had an impairment affected by walking, citing in support "abnormal pulmonary examination and CXR secondary to silicosis"; he did not quantify this limitation in terms of hours. He indicated that sitting was not affected by the impairment; that plaintiff could occasionally (up to 1/3 of an 8-hour day) perform several postural activities (climbing, balancing, stooping, crouching, kneeling, crawling); and that plaintiff had a unilateral hearing problem requiring a hearing aide, and hoarseness affecting speech. He also checked boxes indicating that plaintiff had environmental restrictions regarding temperature extremes, fumes, and humidity. (Tr. at 1564-66.)
On March 8, 1999, the ALJ conducted a hearing. Plaintiff provided a medication list. He was taking aspirin for his heart, Sertraline for depression, Clonazepam for nerves and seizures, and Trazodone for depression. (Tr. at 33, 159.)
Plaintiff testified as follows. He was born on July 1, 1950, completed the eleventh grade at school, and got a GED. In April 1995, he was terminated from his most recent job was a forklift driver and a warehouseman, because he missed too much time from being in hospitals. He was on dialysis for about 2.5 months in early 1995. Since 1991, he had problems with his legs swelling. The problem has worsened; his legs swell roughly once a week and can stay swollen for three or four days. They swell if he is "up on them" or "doing something." He breaks out with a rash, which worsens as his legs swell. Sitting in hard chairs or standing on hard surfaces sometimes caused the swelling. He could work for 2 to 4 hours before it caused painful swelling. On a typical day he watched television and played on the computer. During nice weather, he went outside and walked; with stops, he could go half a mile to a mile. He sometimes hunted and fished, did a little housework, and sometimes mowed the yard. (Tr. at 37, 39-40, 44, 48, 51, 53-56, 58-60.)
Brenda Young, a vocational expert, testified at the hearing that plaintiffs past warehouse work was heavy, but his wafer inspection job was light work. The ALJ asked a hypothetical question that assumed an individual with plaintiffs age, education, and work experience; a sedentary RFC; a mental impairment requiring simple, routine tasks; very minimal walking; and no hazardous machinery. Ms. Young responded that approximately 2000 sedentary assembly jobs existed in the St. Louis metropolitan area satisfying these assumptions. If the individual had to keep his feet elevated, however, she testified that no jobs would be available. (Tr. at 62-64.)
Shannon Boyd, plaintiffs wife, testified that since January 1995 plaintiff had become less active and more confused, that he has had a couple of seizures, and that he has lost his sense of direction. (Tr. at 65-66, 69.)

B. The ALJ's decision
On June 15, 1999, upon considering all of the exhibits in the record, the testimony, and the factors from Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir.1984), for evaluating subjective complaints of pain, the ALJ found the following. Plaintiff meets the Act's disability insured status requirements and has not engaged in substantial gainful activity since January 5, 1995. He
has a history of severe appendectomy complicated by acute respiratory distress and multiple organ failure with *1018 congestive heart failure and renal failure and seizures and vasculitis now stable without medical therapy compounded by some mild hearing problems and some mild cognitive dysfunction and mild to moderate depression with not severe residuals, but that he does not have an impairment listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4.
Plaintiff's complaints of disabling pain and functional limitations and his wife's corroborating testimony were found not fully credible, as there was "no reason that plaintiff is unable to engage in at least sedentary type work." Tr. at 14-15, 17-19.)
Specifically, in Finding 5, the ALJ found that plaintiff had the RFC
to perform the physical exertion and nonexertional requirements of work except for occasional lifting of more than 10 pounds or frequent carrying of more than five pounds or prolonged standing or walking, the claimant requiring predominantly seated work. He further should not be exposed to temperature extremes or humidity or fumes or hazardous machinery and requires the use of a hearing aide and has some hoarseness of voice. He can performed [sic] at least unskilled work as well ....
(Tr. at 19.) The ALJ also found that plaintiff could not return to his past relevant work as a warehouse worker and inspector and that his RFC for the full range of sedentary work was reduced by the above-quoted limitations. Considering plaintiffs vocational factors and RFC, the ALJ found that plaintiff can perform jobs existing in significant numbers in the national economy, such as assembly work, and that he is not disabled. The ALJ found the decision "consistent with the state agency physician opinion after their review of the record that the claimant was not so limited as to preclude all activity, even sedentary." (Tr. at 18-20.)
After the hearing, plaintiff submitted additional records that show the following. Earl Dick, M.D., initially saw plaintiff on August 4, 1998. Dr. Dick indicated that plaintiff had a mood disorder with general medical condition and prescribed medication. Dr. Dick saw him several more times (up to April 19, 1999) for psychiatry medication management. (Tr. at 1642, 1646, 1649, 1654, 1659, 1671.)
On November 19, 1998, plaintiff and his wife called a nurse to report that plaintiff had been out hunting, that he was not feeling well when he awoke in the morning, and that he had blacked out. Hospital triage notes from that day indicate that he had had a cold with a cough and shortness of breath for the prior month and that it was not bad enough to quit smoking. He had been taking Comtrex for his cold symptoms. He was diagnosed with bronchitis, prescribed an antibiotic, and advised to stop smoking. (Tr. at 1661-62.)
On November 30, he sought medical care, complaining of dizziness, syncope, vasculitis, headache, and unsteady gait. (Tr. at 1660.)
On January 4, 1999, Dr. Timothy Vaughan saw plaintiff regarding complaints of headaches, hands going to sleep, and leg weakness. The headaches were diagnosed as sinusitis. Medical progress notes from January 15, 1999, mention plaintiffs history of skin rash on lower extremities and vasculitis. (Tr. at 1653, 1656-57.)
The Appeals Council declined further review after considering the additional materials. (Tr. at 6-7.) Hence, the ALJ's decision became defendant's final decision subject to judicial review.

*1019 II. DISCUSSION
Plaintiff raises two arguments in support of his complaint. He first argues that the ALJ did not provide a rationale for the weight given to the medical sources, citing 20 C.F.R. § 404.1572 and SSR 96-8p, 1996 WL 374184. For example, he maintains "[t]he ALJ picked and chose between the opinions of the non-treating, non-examining state agency physician and the consultative examiner, Dr. Schutzenhofer." Plaintiff contends that the ALJ's limitation to sedentary work is inconsistent with Dr. Proctor's RFC limitation to medium work.
Second, plaintiff argues that the ALJ failed to develop the record sufficiently. Specifically, he maintains that the ALJ failed to order a psychological consultative examination to assess his cognitive function and failed to order that Dr. Schutzenhofer be provided with plaintiffs medical records in order to produce medically acceptable opinion evidence.[4] Moreover, plaintiff suggests that Dr. McElroy's report does not constitute substantial evidence because Dr. McElroy is a pediatrician and did not examine plaintiff. (Doc. 19 at 9-12.)
The court's role on review is to determine whether the Commissioner's findings are supported by substantial evidence in the record as a whole. See Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir.2002). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Id. In determining whether the evidence is substantial, the court considers evidence that detracts from, as well as supports, the Commissioner's decision. See Prosch v. Apfel, 201 F.3d 1010, 1012 (8th Cir.2000). So long as substantial evidence supports that decision, the court may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome or because the court would have decided the case differently. See Krogmeier, 294 F.3d at 1022.
Tackling plaintiff's two primary arguments in reverse order, the court concludes that the ALJ sufficiently developed the record with respect to plaintiff's cognitive functioning. A consultative psychological examination was not necessary, because the ALJ accepted plaintiff's evidence (i.e., the April 16, 1998 neuropsychological evaluation), which showed that plaintiff had mild cognitive dysfunction. See Haley v. Massanari, 258 F.3d 742, 750 (8th Cir.2001) (medical reports in the record allowed the ALJ to make an informed decision without ordering a consultative examination); cf. SSR 85-15, 1985 WL 56857, at *4 (a "substantial" loss of ability to meet the basic mental demands of competitive, remunerative, unskilled work-related activities would severely limit the potential occupational base). Moreover, in developing the hypothetical question for the vocational expert, the ALJ directed Ms. Young to assume that plaintiff had a mental impairment limiting him to simple, routine tasks. Cf. SSR 85-15, 1985 WL 56857, at *4 (in the world of work, losses of intellectual capacities are generally more serious when the job is complex).
The court also concludes that the ALJ developed the record sufficiently with respect to Dr. Schutzenhofer's report. Although it is difficult to discern from the report all of the specific documents the doctor had before him, it is undisputed that the doctor had "multiple records available for review." Moreover, plaintiff has not pointed to any authority mandating *1020 that a doctor be presented with an individual's entire medical filewhich in this case is well over 1000 pages longin order to conduct an examination or to assess an individual's current RFC.
Plaintiff's suggestion that Dr. McElroy's report does not constitute substantial evidence because Dr. McElroy is a pediatrician and did not examine plaintiff is not persuasive. First, the fact that Dr. McElroy specializes in pediatrics does not detract from his capacity to assess plaintiffs RFC. Cf. 20 C.F.R. § 416.927(d)(5) (the Commissioner will "generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist"). Second, Dr. Proctor, a generalist, affirmed Dr. McElroy's assessment. Third, although the opinions of non-examining consultative physicians Drs. McElroy and Proctor probably are not substantial evidence per se, see Kelley v. Callahan, 133 F.3d 583, 589 (8th Cir.1998) ("The opinion of a consulting physician who examines a claimant once or not at all does not generally constitute substantial evidence."), their opinions still constitute evidence that the ALJ needed to consider, along with the rest of the file, see 20 C.F.R. § 416.927(d) ("Regardless of its source, we will evaluate every medical opinion we receive.").
Unlike plaintiff's argument regarding the development of the record, his argument concerning the weight the ALJ gave to the two RFC assessments is persuasive.
When, as in this case, an ALJ considers findings of a state agency medical consultant or other program physician, the ALJ "will evaluate the findings using relevant factors" in 20 C.F.R. § 416.927(a)(e), "such as the physician's or psychologist's medical specialty and expertise in our rules, the supporting evidence in the case record, supporting explanations provided by the physician or psychologist, and any other factors relevant to the weighing of the opinions." See 20 C.F.R. § 416.927(f)(2)(h). Unless a treating source's opinion is given controlling weight, the ALJ decision "must explain" the weight given to the opinions of a state agency medical consultant or other program physician. See id. In the decision's narrative discussion section, the ALJ "must ... explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." SSR 96-8p, 1996 WL 374184, at *7.
The ALJ failed to comply with § 416.927(f)(2)(h) by considering the factors described therein, and failed to follow SSR 96-8p by explaining how the differences regarding postural limitations were considered and resolved. The ALJ's statementthat "the state agency physician opinion after their review of the record that the claimant was not so limited as to preclude all activity, even sedentary" falls short of satisfying the requirements of § 416.927(f)(2)(ii) and SSR 96-8p.
The ALJ, by failing to include in Finding 5 Dr. Schutzenhofer's RFC assessment regarding postural activities (climbing, balancing, stooping, crouching, kneeling, and crawling) implicitly rejected that portion of Dr. Schutzenhofer's RFC assessment. It is improper to deduce from the ALJ's subsequent findingi.e., plaintiffs RFC for the full range of sedentary work is reduced by the limitations set forth in Finding 5 that the ALJ "gave plaintiff the benefit of the doubt" and took into account the limitations found by Dr. Schutzenhofer. To so hold require ignoring the plain language of a Social Security Ruling:
The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function *1021 basis, including the functions in paragraphs (b), (c), and (d) of 20 CFR 404.1545 and 416.945. Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy.
SSR 96-8p, 1996 WL 374184, at *1; see also 20 C.F.R. §§ 404.1545(b), 416.945(b) (a limited ability to perform certain physical demands of work activity, including postural functions, such as stooping or crouching, may reduce an individual's ability to do past work and other work.). Dr. Schutzenhofer's RFC assessment as to the postural activities, while consistent with the general parameters of sedentary work, see SSR 85-15, 1985 WL 56857, at ___ 7-8 (describing the effects of postural limitations on unskilled sedentary jobs), is not consistent with the RFC assessment affirmed by Dr. Proctor, because that assessment found no limitations with regard to postural activities.
Thus, the court cannot properly conclude that substantial evidence supports the ALJ's decision. See Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles.").
For the reasons set forth above, the decision of the Commissioner of Social Security is reversed under Sentence 4 of 42 U.S.C. § 405(g) and the action is remanded to the Commissioner for further proceedings. On remand, the ALJ shall reconsider plaintiffs claim and make supplemental findings explaining the rationale for the relative weight given to the medical source opinions.

ORDER OF REMAND
In accordance with the memorandum opinion filed herewith,
IT IS HEREBY ORDERED that the final decision of the defendant Commissioner of Social Security denying disability benefits to plaintiff Randall Boyd is reversed. This action is remanded to the defendant under Sentence 4 of 42 U.S.C. § 405(g) for further proceedings. Consistent with the opinion of the court, upon remand, the Commissioner shall reconsider plaintiff's claim and make specific supplemental findings regarding the opinions of the medical sources.
NOTES
[1] "[S]epsis" is the "presence of ... pathogenic organisms, or their toxins, in the blood or tissues." Stedman's Medical Dictionary 1405 (25th ed. 1990).
[2] Vasculitis is an inflammation of a vessel. See id. at 79, 1690.
[3] Proteinuria is protein in the urine. See id. at 1273.
[4] Plaintiff contends that there is no indication Dr. Schutzenhofer received any records beyond plaintiff's previous consultative examinations. (Doc. 19 at 12.)