# United States Court of Appeals
## For the Eighth Circuit

_____

No. 16-2191

_____

Janet Chesser

*Plaintiff - Appellant*

v.

Nancy A. Berryhill[1], Acting Commissioner of Social Security

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Jonesboro

_____

Submitted: January 12, 2017
Filed: June 9, 2017

_____

Before COLLOTON, GRUENDER, and KELLY, Circuit Judges.

_____

KELLY, Circuit Judge.

_____

[1]Nancy A. Berryhill has been appointed to serve as Acting Commissioner of Social Security, and is substituted as appellee pursuant to Federal Rule of Appellate Procedure 43(c).

Janet Chesser appeals the district court's[2] order affirming the Social Security Administration's (SSA) denial of social security disability benefits. Chesser argues that the Administrative Law Judge's (ALJ) determination of the severity of her mental limitations is not supported by substantial evidence in the record as a whole.

## I. Background

Chesser, born in 1986, protectively filed social security disability applications on April 26, 2012. She alleged a disability onset date of December 15, 2011, stemming from anxiety, depression, nightmares, paranoia, auditory and visual hallucinations, panic attacks, carpal tunnel syndrome,[3] and migraine headaches.

On September 3, 2013, the ALJ held a hearing on Chesser's claims. Chesser presented evidence of the above conditions, including documentary evidence from several medical sources. Chesser testified that she left her most recent job because she moved to another state following a divorce. She testified that she was unable to secure employment because she could not "comprehend anything" and did not "understand what people tell" her. Chesser explained that she spent her time watching television and sleeping, that she preferred to be alone, and that her boyfriend managed the household and cooked meals. She said that mental health treatment and medication improved her symptoms, but that she was unable to afford all of the medications prescribed to her. Chesser's written surveys and application for benefits echoed these complaints regarding depression, anxiety, and mood swings.

---

[2]The Honorable Brian S. Miller, Chief Judge, United States District Court for the Eastern District of Arkansas, adopting the report and recommendation of the Honorable Beth M. Deere, United States Magistrate Judge for the Eastern District of Arkansas.

[3]Chesser does not challenge the ALJ's determination of her physical limitations resulting from carpal tunnel syndrome.

The ALJ considered the entirety of the record and applied the familiar five-step process prescribed by the social security regulations. See 20 C.F.R. § 404.1520(a); Bowen v. Yuckert, 482 U.S. 137, 140–42 (1987). The ALJ ultimately determined that Chesser had the Residual Functional Capacity (RFC) to perform "light work," as that term is defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b),

> except the claimant cannot perform rapid repetitive flexion or extension of the wrists bilaterally. The claimant is able to perform work where interpersonal contact is incidental to the work performed, where "incidental" is defined as interpersonal contact requiring a limited degree of interaction such as meeting and greeting the public, answering simple questions, accepting payment and making change. The claimant is able to perform work where the complexity of tasks can be learned by demonstration or repetition within thirty days with few variables, little judgment, and the supervision required is simple, direct, and concrete.

In arriving at this RFC determination, the ALJ found that Chesser's testimony about the severity of her limitations was not fully credible, and as a result, afforded little weight to the observations of Chesser's caseworker and Mental Health Paraprofessional (MHPP), because those opinions were based on Chesser's subjective complaints. Likewise, the ALJ assigned little weight to the opinion of Chesser's treating physician, finding his opinions were internally inconsistent and inconsistent with the record as a whole. Relying on testimony from a vocational expert, the ALJ held that Chesser was able to perform work existing in significant numbers in the national economy. The ALJ concluded that Chesser was not disabled and denied her request for benefits.

## II. Discussion

We review de novo whether substantial evidence in the record as a whole supports the ALJ's decision. See Milam v. Colvin, 794 F.3d 978, 983 (8th Cir. 2015).

-3-

"Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Prosch v. Apfel, 201 F.3d 1010, 1012 (8th Cir. 2000). While we must consider both evidence that supports and evidence that detracts from the ALJ's determination, we "may not reverse the Commissioner's decision merely because substantial evidence supports a contrary outcome." Id. (quoting Warburton v. Apfel, 188 F.3d 1047, 1050 (8th Cir. 1999)). "[I]f it is possible to draw two inconsistent positions from the evidence and one of those positions represents the agency's findings, we must affirm the decision." Cruze v. Chater, 85 F.3d 1320, 1323 (8th Cir. 1996) (quoting Oberst v. Shalala, 2 F.3d 249, 250 (8th Cir. 1993)).

First, Chesser argues that the ALJ erred by assigning little weight to the opinion of her treating psychiatrist, Dr. Miguel Casillas. The opinion of a treating physician is generally afforded "controlling weight if that opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." Wildman v. Astrue, 596 F.3d 959, 964 (8th Cir. 2010) (quoting Brown v. Barnhart, 390 F.3d 535, 540 (8th Cir. 2004)). Where an ALJ assigns less than controlling weight to the opinion of a treating source, the ALJ must "give good reasons" for doing so. Anderson v. Astrue, 696 F.3d 790, 793 (8th Cir. 2012) (quoting 20 C.F.R. § 404.1527(c)(2)). Good reasons for assigning lesser weight to the opinion of a treating source exist where "the treating physician's opinions are themselves inconsistent," Cruze, 85 F.3d at 1325, or where "other medical assessments 'are supported by better or more thorough medical evidence,'" Prosch, 201 F.3d at 1013 (quoting Rogers v. Chater, 118 F.3d 600, 602 (8th Cir. 1997)).

In assigning little weight to Dr. Casillas' opinion, the ALJ reasonably concluded that it was internally inconsistent. As an initial matter, although he is described as Chesser's treating physician, Dr. Casillas examined Chesser only once; that visit constitutes the only instance of mental health treatment by an accepted

medical source in Chesser's record aside from evaluations conducted pursuant to these proceedings. See 20 C.F.R. § 404.1527(c)(2)(i) ("Generally, the longer a treating source has treated [a claimant] and the more times [a claimant] has been seen by a treating source, the more weight [the ALJ] will give to the source's medical opinion."); id. at § 416.927(c) (detailing rules for claims filed before March 27, 2017). Chesser sought treatment with Dr. Casillas on April 18, 2012, approximately four months after her alleged disability onset date and approximately one week before filing for social security benefits. Dr. Casillas' treatment notes from this visit explained that Chesser was experiencing multiple life stressors—unstable relationships, financial problems, and possible homelessness—and that she suffered from "paroia [sic], can't trust, difficulty talking about her problem, [and] severe anxiety to panic." However, Dr. Casillas observed that Chesser remained alert, had appropriate affect, fairly good judgment, and was in "good health, . . . motivated, [and] intelligent." Dr. Casillas diagnosed Chesser with bipolar disorder, anxiety disorder, post-traumatic stress disorder (PTSD), and borderline personality disorder. He opined that Chesser's symptoms rendered her "unable to secure or maintain employment," but concluded that Chesser's prognosis was "good."

In contrast, Dr. Casillas' medical source statement—completed two weeks later—concluded that Chesser had either marked or extreme limitations[4] in almost every area of functioning. Dr. Casillas' medical source statement concluded with the remark that Chesser was "very pathologically impaired," but contained no explanation for this escalation in the described severity of Chesser's symptoms from the time of her appointment two weeks earlier. See Julin v. Colvin, 826 F.3d 1082, 1089 (8th Cir. 2016) (treating physician's conclusory opinion entitled to less weight).

---

[4]According to the medical source statement form, an individual has a "marked" limitation when her "ability to function is limited to a point that would seriously interfere with performance of work activity." An individual has an "extreme" limitation when she has "no useful ability to function in this area."

The ALJ incorporated Dr. Casillas' diagnoses into his discussion of Chesser's impairments. However, because Dr. Casillas examined Chesser only once and because he provided two descriptions of the severity of Chesser's symptoms that were inconsistent, the ALJ did not err in assigning little weight to Dr. Casillas' opinion. See id.; Casey v. Astrue, 503 F.3d 687, 692 (8th Cir. 2007) ("In considering how much weight to give a treating physician's opinion, an ALJ must also consider the length of the treatment relationship and the frequency of examinations."); Cruze, 85 F.3d at 1325 (treating source's opinions assigned lesser weight when the "opinions have largely been inconsistent and are not fully supported by the objective medical evidence").

"[O]ther evidence in the record also supports the ALJ's decision not to accord [Dr. Casillas'] opinion controlling weight." Reece v. Colvin, 834 F.3d 904, 910 (8th Cir. 2016). The record includes a report from Dr. Suzanne Gibbard, a consultative psychologist who examined Chesser at the request of the Social Security Administration. Like Dr. Casillas, Dr. Gibbard diagnosed Chesser with bipolar disorder, anxiety disorder, and PTSD. Dr. Gibbard described Chesser as depressed and anxious, but with logical and relevant thought processes. According to Dr. Gibbard, Chesser could cope with the mental cognitive demands of work-related activities, although she may have problems completing tasks in a timely manner due to her volatile mood and anxiety. In the course of the evaluation, Dr. Gibbard prepared a six-page report detailing Chesser's personal and employment history. See Cantrell v. Apfel, 231 F.3d 1104, 1107 (8th Cir. 2000) (no error in crediting one-time consultant's opinion over treating physician when the consultant's opinion is "supported by better or more thorough medical evidence" (citation omitted)). Similarly, two state agency consultants who reviewed the record concluded that Chesser was capable of unskilled work involving limited interpersonal contact, simple tasks, few variables, little judgment, and direct and concrete supervision.

Chesser complains that the ALJ simply chose the opinion of Dr. Gibbard over that of Dr. Casillas, without offering sufficient reason. But the ALJ considered all of evidence in the record—including Chesser's own responses to agency questionnaires—to conclude that while Chesser suffered impairments, her resulting limitations were not as severe as indicated by Dr. Casillas. Viewing the ALJ's opinion in light of the record as a whole, substantial evidence supports the ALJ's decision to assign little weight to Dr. Casillas' conclusion that Chesser is "very pathologically impaired" and unable to work in any capacity. See Prosch, 201 F.3d at 1013 (internal inconsistency and conflict with other evidence on the record constitute good reasons to assign lesser weight to a treating physician's opinion).

Chesser also argues that the ALJ erred in assigning insufficient weight to the opinions of Chesser's caseworker and MHPP, Lisa Wilbanks. The parties agree that Wilbanks constitutes an "other medical source" pursuant to agency regulation. See 20 C.F.R. § 404.1513(a)(3); Social Security Ruling, SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006). An ALJ may consider the opinion of an other medical source "to show the severity of [a claimant's] impairment(s) and how it affects [a claimant's] ability to function." Social Security Ruling, SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006); see also Nowling v. Colvin, 813 F.3d 1110, 1123 (8th Cir. 2016) (citing 20 C.F.R. § 416.913). In so doing, the ALJ may consider, among other things, the length of the treatment relationship, whether the opinion is consistent with other evidence, the evidence underlying the opinion, and the quality of the opinion's explanation. Social Security Ruling, SSR 06-03p, 2006 WL 2329939, at *4–5 (Aug. 9, 2006). Usually, "[i]n determining what weight to give 'other medical evidence,' the ALJ has more discretion and is permitted to consider any inconsistencies found within the record." Nowling, 813 F.3d at 1123 (alteration in original) (quoting Raney v. Barnhart, 396 F.3d 1007, 1010 (8th Cir. 2005)).

Chesser began seeing Wilbanks one to two times per week in early 2012. Wilbanks completed a third-party function report on May 28, 2012, after treating

Chesser for approximately three months. In the report, Wilbanks expressed the view that Chesser was very unstable, experienced mood swings and outbursts, and was unable to maintain a savings account or use a checkbook because she "has trouble comprehending." Wilbanks indicated that Chesser was capable of following spoken instructions, preparing simple meals, and maintaining personal care, but spent much of her day sleeping and watching television. Wilbanks also highlighted Chesser's difficulty maintaining social and professional relationships.

The ALJ acknowledged that Wilbanks' opinion was relevant to a determination of the severity of Chesser's mental limitations. See Social Security Ruling, SSR 06-03p, 2006 WL 2329939, at *4 (Aug. 9, 2006); cf. Shontos v. Barnhart, 328 F.3d 418, 426–27 (8th Cir. 2003) (error to ignore other medical source evidence). However, the ALJ explained that Wilbanks' report "does not establish that the claimant is disabled, and cannot carry her burden of proof" on that issue because it was based on Chesser's subjective reports and was not based on medically acceptable standards. See Julin, 826 F.3d at 1089 (finding ALJ permissibly declined to give controlling weight to treating physician on workplace limitations insofar as they relied on the claimant's unreliable subjective complaints); Social Security Ruling, SSR 06-03p, 2006 WL 2329939, at *5 (Aug. 9, 2006) ("Not every factor for weighing opinion evidence will apply in every case. The evaluation of an opinion from a medical source who is not an 'acceptable medical source' depends on the particular facts in each case."). According to Chesser, the fact that Wilbanks' opinion was "based in part on Chesser's reported symptoms . . . is not a sufficient reason for discounting the opinion." We agree that the nature of the relationship between Chesser and her case worker is such that Wilbanks' opinion will necessarily be shaped at least in part by the complaints her client self-reports. But the ALJ determined that Chesser's characterization of the severity of her symptoms was not fully credible—a finding that Chesser does not challenge here. See Julin, 826 F.3d at 1089. The ALJ also noted that Wilbanks' report did not satisfy medical standards

of any kind. The ALJ appropriately weighed Wilbanks' opinion along with the other record evidence in determining the severity of Chesser's impairments.

In addition to the reports from Dr. Casillas, Dr. Gibbard, and Wilbanks, two state agency consultants offered their views. These consultants—who admittedly did not examine Chesser—agreed that Chesser suffers from bipolar disorder and anxiety disorder, and that she had some limitations, including mild restrictions in daily living, moderate difficulties in maintaining social function, and moderate difficulties in maintaining concentration, persistence, or pace. After reviewing the record, they recognized that Chesser could not follow detailed instructions or concentrate for an extended period of time, but believed she was able to follow short and simple instructions, get along with coworkers, and make simple work-related decisions. Chesser's own adult function report, completed on May 28, 2012, supported that conclusion. Chesser explained that she was able to prepare simple meals, pay bills, and count change. Chesser said that she was not capable of following written instructions, but that she was capable of following spoken instructions if they are repeated slowly. The ALJ's RFC determination reflected these limitations in Chesser's ability to follow instructions, socialize, and maintain concentration.

The limited treatment records from the emergency room and Chesser's primary care doctor also support the ALJ's conclusion. The records largely document incidents unrelated to Chesser's mental condition, including a basketball injury and appointments related to Chesser's carpal tunnel syndrome. However, for a visit on September 10, 2013, the notes indicate that Chesser was unemployed, but "denied depression." Records that are silent on mental health cannot be used as substantial evidence that the person is not disabled, see Pate-Fires v. Astrue, 564 F.3d 935, 943–44 (8th Cir. 2009), but these records are not silent. Instead, they include observations of Chesser's mood, affect, orientation to time and place, and psychological history. Chesser's denial of any depression—one of the bases on which Chesser filed for benefits—during the period of time for which she seeks

benefits, and doctors' observations of Chesser's mood and affect are relevant to the assessment of the severity of Chesser's symptoms.

### III.  Conclusion

Because the ALJ's decision is supported by substantial evidence in the record as a whole, we affirm.

_____