# United States Court of Appeals
### For the Eighth Circuit

_____

No. 15-1280

_____

Laura Julin,

*Plaintiff - Appellant,*

v.

Carolyn W. Colvin, Acting Commissioner of Social Security,

*Defendant - Appellee.*

_____

Appeal from United States District Court
for the Southern District of Iowa - Davenport

_____

Submitted: October 20, 2015
Filed: June 24, 2016

_____

Before MURPHY, COLLOTON, and BENTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Laura Julin appeals the judgment of the district court[1] upholding the Social Security Commissioner's denial of her application for supplemental security income. We affirm.

---

[1] The Honorable Charles R. Wolle, United States District Judge for the Southern District of Iowa.

I.

In December 2009, Julin applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 423, and for supplemental security income under Title XVI of the Act, 42 U.S.C. § 1382. She claimed a disability onset date of February 15, 2004. Julin based her claims of disability on depression, anxiety, and obsessive-compulsive disorder. Julin alleged that these conditions caused her difficulties with maintaining focus, energy, concentration, social interactions, and a regular schedule.

The Social Security Administration denied Julin's claims initially and on reconsideration, so Julin requested a hearing before an Administrative Law Judge ("ALJ"). After a hearing in July 2011, the ALJ found that Julin was not disabled and affirmed the denial of Julin's applications. On administrative appeal, the Appeals Council remanded the case. The Council instructed the ALJ to evaluate further the opinions of Julin's treating physician, Dr. Welsh, and Julin's residual functional capacity ("RFC"). The Council provided that, if necessary, the ALJ should acquire additional medical evidence.

After a hearing in July 2013 and review of all the evidence, the ALJ again denied Julin's application. Applying the five-step sequential evaluation process used to evaluate whether a claimant is disabled, *see* 20 C.F.R. §§ 404.1520, 416.920; *see also Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987), the ALJ determined at step one that Julin had not engaged in "substantial gainful activity" since February 15, 2004. At steps two and three, the ALJ concluded that although Julin suffered from severe impairments—depressive disorder, anxiety disorder, obsessive-compulsive disorder, and a history of marijuana abuse—the impairments did not meet or equal the severity of any listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

The ALJ then determined Julin's residual functional capacity for purposes of steps four and five. The ALJ found that while Julin had the capacity "to perform a full range of work at all exertional levels," she had several nonexertional limitations. The ALJ stated that Julin's residual functional capacity was "limited to tasks that can be learned in thirty days or less involving no more than simple work-related decisions with few work place changes; no more than occasional, brief, and superficial interaction with the public, co-workers, and supervisors; and no work at production rate pace."

The ALJ submitted Julin's RFC in the form of a hypothetical question to a vocational expert. The expert believed that Julin could not return to any of her past positions of employment but was capable of performing other jobs that exist in significant numbers in the national economy. The ALJ therefore concluded that Julin was not disabled and denied the application for disability insurance benefits and supplemental security income.

Julin appealed, and the Appeals Council denied Julin's request for review. Julin then sought review in the district court, appealing only the denial of supplemental security income based on an alleged onset date of December 21, 2009. The district court upheld the ALJ's decision. Julin appeals, arguing that the record does not support the ALJ's conclusion.

II.

We review *de novo* the district court's judgment upholding the denial of social security benefits. *Carlson v. Astrue*, 604 F.3d 589, 592 (8th Cir. 2010). We will affirm the district court's decision if, based on the record as a whole, substantial evidence supports the ALJ's determination. *Id.* "Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the ALJ's decision." *Id.* (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir.

2006)). We consider evidence that supports the Commissioner's conclusion, as well as evidence that detracts from it, and we review any legal conclusions *de novo*. *Id.*

Julin makes three principal arguments on appeal: that no medical evidence supported the ALJ's determination of residual functional capacity; that the ALJ erred in weighing the medical opinions in the record; and that the ALJ improperly found that Julin lacked credibility. The three issues are interrelated. The ALJ's decision to discount Julin's credibility influenced the ALJ's weighing of medical opinions that were based in part on Julin's reports, and the ALJ's evaluation of the medical opinions informs whether medical evidence supported the ALJ's determination on residual functional capacity. Therefore, we address first whether the ALJ's credibility finding is supported by the record.

Julin argues that there is not substantial evidence to support the ALJ's decision to discount Julin's credibility. She complains that the ALJ did not adequately consider the factors set forth in *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). Credibility determinations are the province of the ALJ, and as long as "good reasons and substantial evidence" support the ALJ's evaluation of credibility, we will defer to her decision. *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). An ALJ may decline to credit a claimant's subjective complaints "if the evidence as a whole is inconsistent with the claimant's testimony." *Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006).

When evaluating the claimant's subjective complaints, the ALJ must consider all of the evidence, including objective medical evidence, the claimant's work history, and evidence relating to the *Polaski* factors: (i) the claimant's daily activities; (ii) the duration, frequency, and intensity of the claimant's pain; (iii) precipitating and aggravating factors; (iv) the dosage, effectiveness, and side effects of medication; and (v) the claimant's functional restrictions. 739 F.2d at 1322; *see also* 20 C.F.R. § 416.929(c).

Julin alleged that her symptoms, including anxiety and extreme tearfulness, were so severe that she was unable to work. After reviewing the relevant factors, the ALJ found that Julin's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but that Julin's claims regarding the intensity and limiting effects of the symptoms were not fully credible.

The ALJ concluded that the objective medical evidence "fail[ed] to provide strong support for [Julin's] allegations of incapacitating symptoms and limitations." We agree that the objective medical evidence was equivocal. Dr. Welsh diagnosed Julin with major depressive disorder and dysthymic disorder, and he assessed Julin's Global Assessment Functioning score between 45 and 50, which suggests serious symptoms or serious impairments in social or occupational functioning. *See Diagnostic and Statistical Manual of Mental Disorders* 34 (Am. Psychiatric Ass'n ed., 4th ed. text rev. 2000). But the evidence also showed that Julin had not attended therapy or suffered an episode of decompensation (*i.e.*, a deterioration of her mental health) since she sought treatment for depression and anxiety in November 2009.

Other evidence cited by the ALJ undermined Julin's credibility. Julin's poor employment history suggested a lack of motivation to work. Although Julin said she had no problems with depression between approximately 1991 and 2004, there was only one year since 1983 when she worked enough to engage in "substantial gainful activity" for purposes of the social security regulations. The ALJ reasonably concluded that Julin's "sporadic work history raises some questions as to whether the current unemployment is truly the result of medical problems." *See Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001); *Woolf v. Shalala*, 3 F.3d 1210, 1214 (8th Cir. 1993).

Inconsistencies between Julin's subjective complaints of disabling impairments and evidence concerning her daily living patterns also raised doubts. *See Haley v. Massanari*, 258 F.3d 742, 748 (8th Cir. 2001). Although Julin claimed she was

unable to work, there was evidence that she could prepare two-course meals most nights, read, and play difficult internet games. Julin left her apartment several times each week to go shopping and clean houses. She met with Dr. Welsh every four to eight weeks after December 2009 and visited family and friends a few times each year. Until at least November 2011, Julin had dinner at a friend's house once or twice a month. These activities tend to show that Julin is capable of completing simple tasks, leaving her home, and interacting with others on at least a superficial level.

That Julin's medication was effective in relieving her symptoms further supports the ALJ's finding that Julin's complaints of disabling depression were not fully credible. *See Guilliams*, 393 F.3d at 802. Julin reported on many occasions that prescribed medications eased her symptoms. At one treatment session, Julin even asked to reduce the frequency of her visits with Dr. Welsh because the medication was having the desired effect. Although Dr. Welsh's treatment notes reflect that Julin discussed severe or worsening symptoms on other occasions, the evidence overall supports a determination that the medication alleviated Julin's symptoms.

Julin's inability to follow a recommended course of treatment also weighs against her credibility. *Id.* Julin sometimes refused or was reluctant to change her medications. Julin contends that her resistance was the result of side effects that she experienced with several antidepressants, but Julin refused other changes in her treatment as well. Julin consistently reported difficulty sleeping to Dr. Welsh, but after the doctor prescribed a sleep aid, Julin did not use it. Julin likewise did not accept a physician's offer to arrange for therapy in November 2009. Although Julin did agree to Dr. Welsh's recommendations on other visits, the ALJ properly gave weight to Julin's resistance to some suggested courses of treatment.

Contradictory statements that Julin made to treating physicians are yet another reason to discount her credibility. *Gray v. Apfel*, 192 F.3d 799, 804 (8th Cir. 1999). In April 2004, at the age of thirty-six, Julin sought treatment for depression, telling

a physician that she had not experienced depression since she was twenty-three years old. When, after a four-year hiatus, Julin was next treated for depression in November 2009, Julin changed her statement and reported lifelong problems with depression, including a suicide attempt in 1997 or 1998 at age 30. The next month, Julin adjusted the history yet again, telling Dr. Welsh that she last attempted suicide around 1989.

There was also evidence from which the ALJ could infer that Julin's claims were overstated and not entirely reliable. *See Chamberlain v. Shalala*, 47 F.3d 1489, 1494-95 (8th Cir. 1995). Julin informed a physician in November 2009 that she sought treatment because she had to "get all [her] ducks in a row" to apply for disability. Julin added that she was not motivated to improve her ability to socialize with others, and that she was pessimistic about the benefits of medications. These statements conflict with Julin's claims of disabling impairments and could support a reasonable inference of unreliability. Although Julin may have provided consistent reports to Dr. Welsh after November 2009, the ALJ could evaluate Julin's conversations with her former treating physicians to assess her credibility. When viewing the record as a whole, there is substantial evidence to support the ALJ's decision to discount Julin's credibility.[2]

---

[2]Julin complains that the ALJ misstated the facts when she said that there was a significant gap in Julin's treatment, but the statement was accurate: Julin received no treatment between November 2005 and November 2009. On appeal, Julin has abandoned her claim for disability insurance benefits starting in February 2004 and sought only supplemental security income for the period after December 21, 2009. While it is true that Julin received treatment every four to eight weeks after November 2009, the ALJ's comment about a gap in treatment properly addressed the periods before her in the administrative proceeding. As to other factual arguments, the ALJ's assertion that Julin was "happy" with her medication was supported by several of Dr. Welsh's treatment notes, and the ALJ's statement that "a great deal of Julin's stress is caused by financial matters" was supported by Julin's testimony. Any mistakes, such as the ALJ's misstatement of Julin's dosage for the medication Lexapro, are not

Having concluded that the ALJ properly discounted Julin's credibility, we consider the ALJ's weighing of the medical opinions. A treating physician's opinion is entitled to controlling weight when it is supported by medically acceptable techniques and is not inconsistent with substantial evidence in the record. *Hamilton v. Astrue*, 518 F.3d 607, 610 (8th Cir. 2008); *see also* 20 C.F.R. § 416.927. If the opinion is not given controlling weight, then the ALJ must review various factors to determine how much weight is appropriate. *See* 20 C.F.R. § 416.927(c). Opinions of treating physicians typically are entitled to at least substantial weight, but may be given limited weight if they are conclusory or inconsistent with the record. *Papesh v. Colvin*, 786 F.3d 1126, 1132 (8th Cir. 2015).

The ALJ reviewed five medical opinions regarding Julin's functional abilities. Dr. Welsh submitted three opinions. In one, he declared that Julin was unable to work full time. In his other opinions, Dr. Welsh stated that Julin struggles to interact with people she knows; that she would have trouble managing appointments more frequent than her treatment sessions; that she would have difficulty with pace, concentration, and completing tasks; and that Julin's interaction with others causes her to feel overwhelmed, tearful, anxious, and irritable.

A state agency medical consultant issued an opinion based on three treatment notes from November and December 2009 and January 2010, and another consultant provided an opinion after reviewing those notes and another set from March 2010. The consultants determined that Julin suffered from major depressive disorder and dysthymic disorder. They believed that Julin would have moderate limitations in social functioning and maintaining attendance, attention, concentration, persistence, and pace. They also anticipated that she would have difficulty carrying out detailed instructions, and require mild restrictions in her activities of daily living. On the

substantial enough to warrant reversing the ALJ's credibility determination. *See Chaney v. Colvin*, 812 F.3d 672, 677 (8th Cir. 2016).

positive side, however, the medical consultants believed that Julin was not significantly limited in her ability to sustain an ordinary routine without special supervision, or in her ability to understand, remember, and carry out simple instructions.

Julin's principal complaint is that the ALJ failed to give Dr. Welsh's opinions controlling weight. On the opinion about Julin's ability to work full time, we believe the ALJ's decision was justified. Dr. Welsh's opinion was conclusory, *see Toland v. Colvin*, 761 F.3d 931, 937 (8th Cir. 2014), and it strayed beyond medical issues to a legal opinion on the application of the social security statute. *See Krogmeier v. Barnhart*, 294 F.3d 1019, 1023 (8th Cir. 2002); *see also* 20 C.F.R. § 416.927(d)(1); *Miller v. Colvin*, 784 F.3d 472, 479 (8th Cir. 2015).

The ALJ also permissibly declined to give controlling weight to Dr. Welsh's opinions on Julin's work-place limitations. Because the ALJ declined to credit Julin, the ALJ was entitled to discount Dr. Welsh's opinions insofar as they relied on Julin's subjective complaints. *See Wildman v. Astrue*, 596 F.3d 959, 967 (8th Cir. 2010); *Kirby v. Astrue*, 500 F.3d 705, 709 (8th Cir. 2007). Dr. Welsh relied in part on his treatment notes and two patient health questionnaires that Julin completed. Much of the content in those documents is derived from Julin's recitation of her symptoms. Dr. Welsh also admitted that it would be difficult to identify Julin's specific work-place limitations without additional objective testing. The ALJ thus gave good reasons for the weight accorded to Dr. Welsh's opinions.

Finally, Julin argues that there was insufficient medical evidence to support the ALJ's determination of residual functional capacity. When assessing a claimant's RFC, the ALJ must consider all relevant evidence in the record. *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007). But a claimant's RFC is a medical question, and some medical evidence must support the RFC determination. *Wildman*, 596 F.3d at 969.

Julin posits that once the ALJ declined to give Dr. Welsh's opinions controlling weight, there was no substantial medical evidence remaining to support the RFC determination. But the ALJ did not reject Dr. Welsh's opinions entirely; context shows that his opinions were still given substantial weight when they were neither conclusory nor premised on Julin's subjective complaints. *See* A.R. 17, 20. Based on Dr. Welsh's opinions, the ALJ reduced the skill level, social interaction, and pace of work in Julin's RFC. A.R. 20. The ALJ also considered the views of the state-agency medical consultants, and the judge conducted an independent review of the medical evidence. *See Krogmeier*, 294 F.3d at 1024; *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995). Taking all of this together, there was substantial medical evidence to support the RFC. The ALJ thus had no obligation to obtain additional medical evidence. *See McCoy v. Astrue*, 648 F.3d 605, 612 (8th Cir. 2011).

Julin also complains that the ALJ should have included greater limitations in the RFC. Julin contends that she cannot withstand *any* human interaction or maintain attendance. But Dr. Welsh's opinions do not dictate such a stark conclusion, and the ALJ's rejection of Julin's position was permissibly influenced by her determination that Julin was not fully credible. *See Wildman*, 596 F.3d at 969; *Tellez v. Barnhart*, 403 F.3d 953, 957 (8th Cir. 2005). Julin disputes the ALJ's assumption that she was capable of "occasional, brief, and superficial interaction with the public, co-workers, and supervisors." The ALJ's use of the term "occasional," however, when paired with "brief" and "superficial," did not conflict with Dr. Welsh's opinion, as there is no indication that the ALJ or the vocational expert understood the term to carry more than its everyday meaning. Social Security Ruling 96-9p, 1996 WL 374185 (July 2, 1996), cited by Julin, involves a specialized meaning of "occasionally" in the context of sedentary work.

\*       \*       \*

The judgment of the district court is affirmed.

_____

-10-