# United States Court of Appeals
## For the Eighth Circuit

_____

No. 16-1591

_____

Patricia Jane Vance,

*Plaintiff - Appellant,*

v.

Nancy A. Berryhill, Acting Commissioner of Social Security Administration,[1]

*Defendant - Appellee.*

_____

Appeal from United States District Court
for the District of Nebraska - Omaha

_____

Submitted: November 17, 2016
Filed: June 27, 2017

_____

Before COLLOTON, BEAM, and GRUENDER, Circuit Judges.

_____

COLLOTON, Circuit Judge.

---

[1]Nancy A. Berryhill is substituted for her predecessor under Federal Rule of Appellate Procedure 43(c)(2).

Patricia Vance appeals a judgment of the district court[2] upholding the Social Security Commissioner's denial of her application for supplemental security income. We affirm.

I.

Vance applied for supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. § 1382, based on a nerve disorder. She claimed a disability onset date of January 1, 2010, but later amended it to October 3, 2011. The Social Security Administration denied Vance's claim initially and on reconsideration. After a hearing in July 2013, an Administrative Law Judge, applying the familiar five-step process under the regulations, found that Vance was not disabled. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. § 416.920 (2011).

The ALJ determined at step one that Vance had not engaged in "substantial gainful activity" since October 3, 2011, the application date. At step two, he determined that Vance suffered from severe impairments—inherited myelopathy versus conversion disorder, adjustment disorder with mixed anxiety and depressed mood, and borderline intellectual functioning. At step three, however, the ALJ concluded that these impairments did not meet the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (2011).

Before proceeding to steps four and five, the ALJ determined Vance's residual functional capacity. The judge concluded that Vance had the capacity "to perform a range of work activity that: requires no more than a sedentary level of physical exertion; accommodates the use of a walker; and involves only unskilled, simple, routine, and repetitive" tasks. Relying on testimony of a vocational expert, the ALJ

---

[2]The Honorable F.A. Gosset, III, United States Magistrate Judge for the District of Nebraska, sitting by consent of the parties pursuant to 28 U.S.C. § 636(c).

found that despite these limitations, Vance was able to perform jobs that exist in significant numbers in the national economy. Based on this analysis, the ALJ concluded that Vance was not disabled and denied her application. The Appeals Council denied review, and the district court upheld the ALJ's decision.

Vance appeals, citing three alleged errors: (1) that the ALJ failed to explain adequately his decision that Vance did not meet any of the Listing 11.00 impairments, (2) that substantial evidence did not support the ALJ's conclusion that Vance did not meet Listing 12.05C, and (3) that the ALJ failed to give controlling weight to the opinion of Vance's treating physician.

We review the district court's judgment *de novo*, considering evidence that both supports and detracts from the ALJ's conclusion. We will affirm if substantial evidence on the record as a whole supports the Commissioner's determination. *Julin v. Colvin*, 826 F.3d 1082, 1086 (8th Cir. 2016). "Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the ALJ's decision." *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th. Cir. 2006).

II.

Vance argues that the ALJ failed to point to specific evidence to support its step-three conclusion that she did not meet any of the requirements of Listing 11.00. This Listing enumerates several categories of neurological impairments, such as epilepsy, brain tumors, multiple sclerosis, and amyotrophic lateral sclerosis. Vance also argues that the ALJ's discussion of her neurological impairments in step four was inadequate because it was too cursory and one-sided. Vance asks us to remand so that the ALJ can provide a more detailed analysis of this Listing.

In step three, the ALJ did not discuss any particular Listing 11.00 neurological impairment, but he did address the Listing overall. The judge stated that in reaching

the conclusion that Vance did not meet the Listings, "the undersigned has appropriately evaluated medical and other evidence pertaining to the claimant's medically determinable impairments in conjunction with all the relevant severity criteria contained within the 1.00 Musculoskeletal System, *Neurological*, and 12.00 Mental Disorders series of listed impairments." AR 26 (emphasis added).

In step four, the ALJ discussed Vance's complaints of a nerve disorder in greater detail. He explained that Vance sought treatment for leg numbness and tingling with several neurologists in November 2010, but that testing was essentially normal. He acknowledged that further testing in April 2011 showed decreased sensation and weakness and an abnormal gait, but that Vance had good strength in her extremities. The judge noted that Vance was diagnosed with inherited myelopathy versus conversion disorder in June 2011, and that by January 2012, she complained that her symptoms had worsened. Testing, however, showed that strength and sensation were intact. The ALJ also noted that other physical examinations in 2012 showed that Vance was generally in good health.

Generally, "an ALJ's failure to adequately explain his factual findings is 'not a sufficient reason for setting aside an administrative finding.'" *Scott ex rel. Scott v. Astrue*, 529 F.3d 818, 822 (8th Cir. 2008) (quoting *Senne v. Apfel*, 198 F.3d 1065, 1067 (8th Cir. 1999)). Remand is warranted "where the ALJ's factual findings, considered in light of the record as a whole, are insufficient to permit this Court to conclude that substantial evidence supports the Commissioner's decision." *Id.* An ALJ's failure to address a specific listing or to elaborate on his conclusion that a claimant's impairments do not meet the listings is not reversible error if the record supports the conclusion. *Karlix v. Barnhart*, 457 F.3d 742, 746 (8th Cir. 2006); *Pepper ex rel. Gardner v. Barnhart*, 342 F.3d 853, 855 (8th Cir. 2003). "We have consistently held that a deficiency in opinion-writing is not a sufficient reason for setting aside an administrative finding where the deficiency had no practical effect on the outcome of the case." *Senne*, 198 F.3d at 1067.

In her argument about Listing 11.00, Vance asserts only that she meets Listing 11.17A. Listing 11.17A requires that a claimant have a "[d]egenerative disease not listed elsewhere, such as Huntington's chorea, Friedreich's ataxia, and spino-cerebellar degeneration," as well as "[d]isorganization of motor function as described in 11.04B." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 11.17A (2011). To meet Listing 11.04B, disorganization of a claimant's motor function must be "[s]ignificant and persistent . . . in two extremities, resulting in sustained disturbance of gross and dexterous movements, or gait and station." *Id.* § 11.04B. Because the ALJ's conclusion on Listing 11.17A is supported by substantial evidence on the record as a whole, the fact that he did not mention Listing 11.17 in his opinion or thoroughly discuss each piece of medical evidence does not warrant remand.

Vance fails to meet Listing 11.17A because the medical evidence does not show that she had significant and persistent disorganization of motor function in two extremities. In March 2011, Dr. Dugan, a neurologist, reported that although Vance complained that her right leg would give out, her spinal discs were benign, the strength in her extremities was good, and her reflexes were symmetrically brisk. An April 2011 appointment showed that although she used a cane and her gait was slightly wide based, Vance's motor function was largely intact with no atrophy or fasciculation. She was able to stand up from a chair without assistance, and she had good strength in her extremities despite some decrease in sensation. A neurological follow-up showed that Vance's knee and ankle reflexes were intact, that her strength was good, and that her falls did not appear to have a neurological cause. A magnetic resonance image of Vance's spine in May 2011 showed no anomalies or pathology, and further examination of her right lower extremity revealed no abnormalities. In June 2011, Dr. Wisco, a neurologist, diagnosed Vance with myelopathy versus conversion disorder, but Dr. Wisco's testing at the time showed that Vance's neurological and motor function and gait were largely unchanged from April. At an appointment in January 2012, Vance displayed slightly improved motor function from June 2011, and her reflexes increased in all extremities symmetrically. Her gait was

narrow based, but she was able to maneuver with a walker with little difficulty. A reasonable mind could find the record supports the ALJ's determination that Vance does not meet Listing 11.17A.

III.

Vance complains that the ALJ erred in finding that she did not meet the requirements for mental retardation under Listing 12.05C. Listing 12.05C states:

> 12.05 Mental Retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> . . .
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05C (2011) (revised Sept. 3, 2013, to refer to "intellectual disability" rather than "mental retardation").

To meet the requirements of this Listing, Vance must demonstrate both that she (1) suffers from significantly subaverage general intellectual functioning with deficits in adaptive functioning that initially manifested during the developmental period; and (2) meets the requirements of subsection C. *See Ash v. Colvin*, 812 F.3d 686, 690 (8th Cir. 2016).

The ALJ found that Vance did not meet Listing 12.05C. Although she had verbal, performance, and full scale IQ scores of 63, 69, and 64, respectively, the ALJ determined that Vance failed to show "significantly subaverage general intellectual functioning with deficits in adaptive functioning." The ALJ acknowledged that Vance was in special education classes, but noted that during the developmental period, she graduated from high school, obtained a driver's license, married, and gave birth to children. Based on this evidence, the ALJ determined that Vance demonstrated abilities in the developmental period that were inconsistent with "'listing-level' mental retardation."

Vance argues that she meets Listing 12.05C because she exhibited the requisite deficits in adaptive functioning prior to age 22. She cites several factors: her placement on an Individual Education Plan in high school; reports from her high school psychologist, Dr. Zimmerman, indicating that she had mild delays in articulation, language, and organizational skills; her limited employment history; and her difficulty with performing activities of daily living.

Other evidence in the record, however, supports the ALJ's conclusion. Vance now can read, write, pay bills, count change, groom herself, cook, perform household chores with her daughter's help, shop, go out to eat, attend church, and talk on the phone. These activities are inconsistent with the deficits in adaptive functioning contemplated by Listing 12.05C. *See Johnson v. Colvin*, 788 F.3d 870, 873 (8th Cir. 2015); *Clark v. Apfel*, 141 F.3d 1253, 1256 (8th Cir. 1998). Dr. Zimmerman's own report supports the ALJ's conclusion as well. The report states that Vance performed only "mildly below developmental levels" and that she was "functioning within the educable range." The report also suggests the Vance is capable of holding employment when it counsels that her "instruction should emphasize career planning and pre-vocational training."

While Vance's history of special education and low IQ scores suggest some level of intellectual disability, "[t]he mere fact that some evidence may support a conclusion opposite to that reached by the Commissioner does not allow this Court to reverse the decision of the ALJ." *Johnson v. Barnhart*, 390 F.3d 1067, 1070 (8th Cir. 2004). The ALJ reasonably found, based on the record as a whole, that Vance does not exhibit the deficits in adaptive functioning needed to meet Listing 12.05C.

IV.

Vance next argues that the ALJ erred by not giving controlling weight to the opinion of her treating physician, Dr. Jung, concerning her residual functional capacity. The ALJ gave Dr. Jung's opinion only partial weight after determining that the opinion relied in part on Vance's subjective complaints. Because the ALJ found that Vance was not credible, it followed that Dr. Jung's opinion lacked force when it relied on Vance's complaints. The ALJ instead gave greater weight to the opinions of state agency medical consultants.

A treating physician's opinion is entitled to controlling weight when it is supported by medically acceptable techniques and is not inconsistent with substantial evidence in the record. *Julin*, 826 F.3d at 1088; *see also* 20 C.F.R. § 416.927 (2011). But an ALJ need not give a treating physician's opinion controlling weight when the opinion is based on a claimant's subjective complaints that ALJ does not find credible. *Julin*, 826 F.3d at 1089.

When evaluating the claimant's subjective complaints, the ALJ must consider all of the evidence, including objective medical evidence, the claimant's work history, and evidence relating to the factors set forth in *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984): (i) the claimant's daily activities; (ii) the duration, frequency, and intensity of the claimant's pain; (iii) precipitating and aggravating factors; (iv) the dosage, effectiveness, and side effects of medication; and (v) the claimant's

functional restrictions. *Julin*, 826 F.3d at 1086. An ALJ need not expressly cite the *Polaski* factors when, as here, the judge conducts an analysis pursuant to 20 C.F.R. § 416.929, because the regulation "largely mirror[s] the *Polaski* factors." *Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007); *see* 20 C.F.R. § 416.929(c)(3)(i)-(iv), (vii) (2011) (discussing how the agency will consider information that the claimant submits about pain or other symptoms).

The ALJ concluded that the objective medical evidence did not support Vance's allegations as to the intensity, duration, and limiting effects of her physical impairments. Vance complained that her legs hurt her and that she repeatedly fell, but evidence showed that she had good strength in her extremities, that her knee and ankle reflexes were intact, and that she had no structural or anatomic anomalies. Although testing revealed decreased sensation in her lower extremities, and she was diagnosed with myelopathy versus conversion disorder, evidence also showed that she could stand up from a chair without the use of her arms and that she was able to maneuver with a walker without difficulty. Her physical examinations since 2012 were also normal.

The inconsistency between Vance's subjective complaints and evidence regarding her activities of daily living also raised legitimate concerns about her credibility. *See Haley v. Massanari*, 258 F.3d 742, 748 (8th Cir. 2001). Vance complained that she could not walk without falling or cook her own meals, but there was evidence that Vance shopped weekly for three to four hours at a time and cooked for herself when she was alone. The record shows that she could drive, perform certain household chores, travel out to eat, and attend church.

Vance's inability to follow treatment recommendations weighed against her credibility, too. *Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir. 2005). A treating physician referred Vance for physical therapy and a neuropsychiatry evaluation, but there is no record that she attended these sessions. Although not discussed in the

ALJ's opinion, there was evidence in the record from which the ALJ could infer that Vance's claims were overstated. *See Chamberlain v. Shalala*, 47 F.3d 1489, 1494-95 (8th Cir. 1995). During a January 2012 neurology appointment, Dr. Dupont and Dr. Wisco observed Vance's gait. In his report, Dr. Dupont stated that although he witnessed Vance fall, the fall appeared to be very non-organic in nature. During the same appointment, Vance noted that she could not hold on to objects with her left hand and that she had been falling more than usual. But Dr. Dupont reported that the tone in her left hand improved with distraction, and that the strength in her extremities had improved from June 2011.

Because the ALJ reasonably concluded that Vance's statements lacked credibility, he could discount Dr. Jung's opinion to the extent that it relied on Vance's subjective complaints. Given the medical evidence detailed above, it is apparent that Dr. Jung's opinion was based partially on Vance's complaints. The medical evidence did not support Dr. Jung's opinion that Vance could stand for only one hour in a workday, that she would need to take unscheduled breaks, and that she would be absent more than four times a month. Rather, his opinion reflected Vance's complaints that she could take only a few steps without resting and that she often needed to rest for half-hour periods before standing again. The ALJ thus had ample reason to discount Dr. Jung's opinion and to rely instead on the opinions of the state agency medical consultants, which were more consistent with the medical evidence. *See Heino v. Astrue*, 578 F.3d 873, 880 (8th Cir. 2009).

\*     \*     \*

For the foregoing reasons, the judgment of the district court is affirmed.

_____