# United States Court of Appeals
## For the Eighth Circuit

_____

No. 17-3406

_____

Cheryl J. Schwandt,

*Plaintiff - Appellant,*

v.

Nancy A. Berryhill, Acting Commissioner of Social Security,

*Defendant - Appellee.*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: November 15, 2018
Filed: June 14, 2019

_____

Before COLLOTON, SHEPHERD, and STRAS, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Cheryl Schwandt appeals a judgment of the district court[1] upholding the denial of her application for disability insurance benefits. We affirm.

---

[1]The Honorable Wilhelmina M. Wright, United States District Judge for the District of Minnesota, adopting the report and recommendation of the Honorable Hildy Bowbeer, United States Magistrate Judge for the District of Minnesota.

I.

In February 2012, Cheryl Schwandt applied for disability insurance benefits under 42 U.S.C. § 423, claiming a disability onset date of January 1, 2012. Schwandt alleged that avascular necrosis of the knees, a full knee replacement, and chronic pain syndrome limited her ability to work as a dental hygienist. The Social Security Administration granted Schwandt's application in July 2012.

As it happened, however, the Administration mistakenly recorded an onset date of January 1, 2001. Under the correct onset date of January 1, 2012, benefit payments should have started in June 2012, because a claimant generally must be disabled for a full five months before benefits can be paid. *See* 42 U.S.C. § 423(a)(1), (c)(2). The erroneous onset date resulted in benefit payments dating back to February 2011, twelve months before the application date. *See id.* § 423(b). The agency's error thus resulted in Schwandt receiving undeserved payments for the months from February 2011 to May 2012. When the agency discovered the mistake, it sought to recover the overpayments, and declined to grant Schwandt a waiver that would allow her to keep the money.

Around this time, an agency employee learned that Schwandt's earnings had been "subsidized" since 2010, meaning that Schwandt was paid more than the reasonable value of the actual services she performed. *See* 20 C.F.R. § 404.1574(a)(2). As a result, the employee thought that Schwandt had not engaged in substantial gainful activity after 2009, and recommended using an amended disability onset date of December 31, 2009, to calculate Schwandt's benefits. The earlier onset date would have allowed Schwandt to keep the overpayments that she received from the government. Acting on this recommendation, an agency disability examiner reopened Schwandt's claim in September 2013 to investigate the matter. After conducting a full review, however, the agency concluded that Schwandt's

impairments had not been disabling before 2012, and that the correct onset date was still January 1, 2012.

In an effort to establish an earlier onset date of December 31, 2009, Schwandt requested a hearing before an administrative law judge. The ALJ informed Schwandt before the hearing that she would evaluate Schwandt's disability status from "December 31, 2009 through the present." Schwandt responded with a letter objecting to any reconsideration of her disability status from 2012 onward, but she did not attempt to withdraw her request for a hearing.

The ALJ began the hearing by overruling Schwandt's objection to the scope of the hearing. Applying the familiar sequential process, the ALJ then concluded that Schwandt had not been disabled since December 31, 2009. *See Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520(a)(4). The ALJ determined at step one that Schwandt had been engaged in substantial gainful activity from December 31, 2009, to December 31, 2011, so she was not disabled during that period. Schwandt had *not* been engaged in substantial gainful activity since January 1, 2012, but the ALJ concluded that Schwandt could perform past relevant work and therefore was not disabled from 2012 onward. As a result, Schwandt was not entitled to any disability insurance benefits. *See* 42 U.S.C. § 423(a)(1)(E), (d).

After the Appeals Council denied review of the ALJ's decision, Schwandt sought review in district court under 42 U.S.C. § 405(g). The district court affirmed the Commissioner's disability determination, but remanded to the Administration for further consideration of the overpayment waiver issue. Schwandt appeals the portion of the district court's order affirming the disability determination, and we have jurisdiction despite the pendency of the waiver issue before the agency. *See Forney v. Apfel*, 524 U.S. 266, 269, 271-72 (1998).

We review the district court's judgment *de novo* and will affirm if substantial evidence supports the Commissioner's decision. *Vance v. Berryhill*, 860 F.3d 1114, 1117 (8th Cir. 2017). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Id.* "We consider evidence that supports the Commissioner's conclusion, as well as evidence that detracts from it, and we review any legal conclusions *de novo*." *Julin v. Colvin*, 826 F.3d 1082, 1086 (8th Cir. 2016).

II.

Schwandt first asserts that there were defects in the process that culminated in the ALJ's decision that Schwandt was not disabled. Schwandt argues that the Commissioner improperly reopened the favorable July 2012 determination at two separate times: first, when a disability examiner reopened to decide whether the onset date should be December 31, 2009, instead of January 1, 2012, and second, when the ALJ chose to reconsider the 2012 onset date. Schwandt faults both the disability examiner and the ALJ for failing to articulate that they were reopening based on "good cause" and for making no findings to support a "good cause" determination. *See* 20 C.F.R. §§ 404.987-.989.

The disability examiner's decision to reopen was governed by regulations that say the agency has authority to reopen determinations on its "own initiative," *id.* § 404.987(b), for "good cause." *See id.* §§ 404.905, .987, .988(b). The agency has "good cause" where "[n]ew and material evidence is furnished," "[a] clerical error in the computation or recomputation of benefits was made," or "[t]he evidence that was considered in making the determination or decision clearly shows on its face that an error was made." *Id.* § 404.989(a)(1)-(3).

The examiner reopened the benefits determination after an agency employee recommended changing the disability onset date in Schwandt's favor, to December

31, 2009, based on "new and material information regarding [Schwandt's] income." Specifically, based on information received from Schwandt's employer, the agency employee thought that Schwandt's pay since 2010 amounted to a "60% subsidy," meaning that the reasonable value of the work that she performed amounted to only 40% of her income. *See id.* § 404.1574(a)(2). If Schwandt had been earning only 40% of her income since 2010, then the last time that Schwandt performed substantial gainful activity would have been December 2009. Although the examiner did not use the words "good cause" in explaining the reopening, she cited "new and material information" regarding the 60% pay subsidy, and that was in substance a determination of good cause. *See id.* § 404.989(a)(1).

Although an earlier onset date would only have helped Schwandt to receive more benefits, she now contends that the examiner was not justified in citing "new and material information." Whether a determination of "new and material evidence" is considered a finding of fact that is reviewed for substantial evidence, *see* 42 U.S.C. § 405(g); *Higginbotham v. Heckler*, 767 F.2d 408, 410-11 (8th Cir. 1985), or a legal question reviewed *de novo*, *see Cole ex rel. Cole v. Barnhart*, 288 F.3d 149, 152 (5th Cir. 2002), we conclude that the agency was justified in reopening.

The information from Schwandt's employer was "new," because the agency first received it in July 2013, well after it had made the July 2012 determination. *See Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996). The information was also "material," because there was a reasonable probability that it would have changed the outcome if the agency had considered it initially. *See Cieutat v. Bowen*, 824 F.2d 348, 358 (5th Cir. 1987). Schwandt's employer provided information about her pay and work duties that suggested a 60% subsidy had been in place since 2010. If a complete review had verified that degree of subsidy, then Schwandt would not have engaged in substantial gainful activity during 2010 and 2011, and her onset date could have changed to December 31, 2009. *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v).

This earlier onset date would have allowed Schwandt to retain all benefits previously paid by the agency.

Further investigation was required, and an agency examiner eventually determined in light of a more complete record that Schwandt was not disabled before 2012. But the information available to the agency at the time of reopening was sufficient to justify that action. And the reopening, originally undertaken because it could have increased Schwandt's benefits, ultimately did not change the *status quo*. We therefore reject Schwandt's claim that she is entitled to relief based on an improper reopening by the agency examiner.

Schwandt herself then requested a hearing before an ALJ, and she now complains that the ALJ improperly "reopened" the agency's July 2012 benefits determination. The ALJ's action in this case, however, was not governed by the same regulation on reopening that applied to the agency examiner. *See Highfill v. Bowen*, 832 F.2d 112, 113-15 (8th Cir. 1987); 20 C.F.R. §§ 404.921(a), .946(a). Schwandt requested review of the "reconsideration" determination that the agency issued in the wake of the examiner's reopening. This determination included a finding that Schwandt was disabled as of January 1, 2012.

When a claimant seeks review before an ALJ, the issues before the ALJ "include all the issues brought out in the initial, reconsidered or revised determination that were not decided entirely in [the claimant's] favor." 20 C.F.R. § 404.946(a). But the regulations further provide that "if evidence presented before or during the hearing causes the administrative law judge *to question a fully favorable determination*, he or she will notify you and will consider it an issue at the hearing." *Id.* (emphasis added). Where, as here, the ALJ ends up questioning and reversing a favorable determination under § 404.946(a), we review that final decision under the substantial evidence standard, as discussed in Part III below. *See Highfill*, 832 F.2d at 115.

The ALJ did not give her reasons for reconsidering the favorable determination until she issued her written decision.  Schwandt claims that the ALJ's failure to give these reasons *before* the hearing was a violation of due process.  Due process requires that notice be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).  After Schwandt submitted a brief focusing on the overpayment issue, the ALJ notified Schwandt that the only issue at the hearing would be Schwandt's disability status from "December 31, 2009 through the present."  The ALJ even postponed the hearing to give Schwandt adequate time to prepare on the disability issue.  The ALJ's notice prompted Schwandt to send a letter objecting to the hearing's scope.  At the beginning of the hearing, the ALJ twice stated that she was overruling Schwandt's objection, and Schwandt confirmed that she understood the proceedings could result in a determination that she was not disabled at all, even since January 1, 2012.  Under these circumstances, there was adequate notice to Schwandt and no due process violation.

Schwandt argues that *res judicata* barred the Commissioner from reversing the favorable determination finding her disabled.  But *res judicata* does not bar the Commissioner from revising a determination when the agency properly reconsiders that determination under 20 C.F.R. § 404.946(a) or 20 C.F.R. §§ 404.987-.989.  *See Highfill*, 832 F.2d at 115; *Dugan v. Sullivan*, 957 F.2d 1384, 1387-89 (7th Cir. 1992); *Draper v. Sullivan*, 899 F.2d 1127, 1130 (11th Cir. 1990) (per curiam).  The ALJ properly reconsidered the favorable determination under § 404.946(a), so *res judicata* did not bar the ALJ's reversal of that determination.  Schwandt's heavy reliance on *Dugan* is unavailing, because the Seventh Circuit there concluded that the agency's attempted reopening did *not* comport with the applicable regulations.  *See* 957 F.2d at 1388-91.

Schwandt also contends that the "clean hands" doctrine warrants judgment in her favor because the Commissioner acted in bad faith. *See Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814-15 (1945). Schwandt argues that the Commissioner used the erroneous onset date as a pretext to terminate her benefits retroactively. Assuming without deciding that the "clean hands" doctrine is applicable in this context, Schwandt's claims of bad faith have no support in the record. The Commissioner acknowledged that the agency's use of an erroneous onset date was not Schwandt's fault and advised Schwandt of her rights with respect to the overpayment. After the agency reconsidered whether Schwandt was entitled to an earlier onset date that would have allowed her to keep the overpayments, it was Schwandt who decided to seek a hearing before the ALJ rather than settle for the *status quo* with an onset date of January 1, 2012. Once Schwandt requested the hearing, the ALJ properly considered both the potential onset date in 2009 and Schwandt's status from 2012 onward. There was no bad faith by the agency.

III.

Schwandt raises several arguments challenging the ALJ's conclusion that she was not disabled from 2012 onward. Schwandt first complains that the ALJ did not give enough weight to the opinions of her treating physician, Dr. Berglund. "A treating physician's opinion is entitled to controlling weight when it is supported by medically acceptable techniques and is not inconsistent with substantial evidence in the record." *Julin*, 826 F.3d at 1088; *see* 20 C.F.R. § 404.1527(c)(2). Even if not entitled to controlling weight, such opinions "typically are entitled to at least substantial weight, but may be given limited weight if they are conclusory or inconsistent with the record." *Julin*, 826 F.3d at 1088.

Dr. Berglund provided three opinions at issue here: (1) that Schwandt could not be on her feet for six hours in an eight-hour workday; (2) that Schwandt could lift only five to ten pounds; and (3) that Schwandt could perform only sedentary work.

The ALJ incorporated the first opinion into Schwandt's residual functional capacity. Dr. Berglund's third opinion was an ultimate determination reserved to the Commissioner, so the ALJ properly declined to weigh it. *See House v. Astrue*, 500 F.3d 741, 744-45 (8th Cir. 2007); 20 C.F.R. § 404.1527(d)(2).

The ALJ partially rejected Dr. Berglund's second opinion, concluding that Schwandt could lift up to ten pounds frequently and up to twenty pounds occasionally. The results of a claimant's medical examinations and the claimant's reported daily activities can undermine a treating physician's opinion. *See Fentress v. Berryhill*, 854 F.3d 1016, 1020-21 (8th Cir. 2017). While Dr. Berglund and other treating physicians consistently documented Schwandt's chronic pain between 2009 and 2014, several examinations from that period found that Schwandt had normal motor strength in the upper and lower extremities. Schwandt's reported daily activities as of February 2012 and July 2013 included cleaning her home, doing laundry, preparing meals, ironing, sweeping, and buying groceries. Schwandt reported in 2012 that she exercised by walking or lifting weights twelve times per month, and that she went to the gym regularly to keep up her muscle strength. Substantial evidence thus supports the ALJ's decision not to assign controlling weight to Dr. Berglund's recommended lifting restriction.

Schwandt next contends that the ALJ improperly discounted her credibility. When evaluating a claimant's subjective complaints of pain, the ALJ must consider objective medical evidence, the claimant's work history, and other evidence relating to (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; and (5) the claimant's functional restrictions. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984); *see also* 20 C.F.R. § 404.1529(c). Schwandt complains that the ALJ did not adequately consider the *Polaski* factors. But an ALJ need not explicitly discuss each factor, *Buckner v. Astrue*, 646 F.3d 549, 558 (8th Cir. 2011), and we will defer to credibility determinations that are supported

by good reasons and substantial evidence. *Julin*, 826 F.3d at 1086. "An ALJ may decline to credit a claimant's subjective complaints 'if the evidence as a whole is inconsistent with the claimant's testimony.'" *Id.* (quoting *Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006)).

As the ALJ recounted, Schwandt testified that she experiences severe, disabling pain in her thighs and feet and that her pain averages a '7' on a scale between '1' and '10,' even with pain medication. She described this pain as causing low energy and as severely limiting her ability to stand, walk, and lift objects. The ALJ found Schwandt's testimony "not entirely credible."

The objective medical evidence undermines Schwandt's testimony. As noted, multiple physical examinations found Schwandt to have normal motor strength in her upper and lower extremities. Examinations also consistently found that Schwandt had full extension, a normal range of motion, and good stability in her knees. Between 2011 and 2012, Schwandt generally reported her pain to be either '3' or '4' on a scale between '0' and '10.' Schwandt did consistently complain of pain over the course of multiple visits with physicians between 2009 and 2014, but the ALJ was entitled to consider the full scope of the medical evidence.

Schwandt contends that the ALJ failed to account for her medications and their side effects. Schwandt and her physicians reported several times that medications were helping to relieve her symptoms, and the ALJ pointed to evidence undermining Schwandt's reports of significant cognitive side effects. Schwandt testified that her medications also have debilitating physical side effects, but Schwandt's medical records and reported daily activities cast doubt on this claim. Viewing the record as a whole, good reasons and substantial evidence support the ALJ's decision to discount Schwandt's credibility.

Schwandt also complains that the ALJ gave only "some weight" to twelve lay witnesses who submitted written statements on her behalf. But an ALJ properly may give less than controlling weight to lay-witness statements that are inconsistent with the record. Schwandt points to statements from witnesses who explained that she does not get out of bed until mid-afternoon on days she does not work, that she has trouble concentrating during conversations, and that she takes naps every few hours. These statements, however, are inconsistent with Schwandt's reported daily activities and psychologists' observations that Schwandt was capable of normal, organized thought processes.

Schwandt next presents several objections to the ALJ's step-four determination that she could perform her past relevant work as a dental hygienist. She first complains that while the ALJ found at step one that Schwandt needed to work many more hours to reach substantial gainful activity levels from 2012 onward, her physical limitations made it impossible for her to work the additional hours. The step-four inquiry, however, was simply whether Schwandt could still perform her past relevant work as a dental hygienist. *See* 20 C.F.R. § 404.1520(a)(4)(iv). Her "past relevant work" was her pre-2012 work as a dental hygienist, because Schwandt had performed *that* work at substantial gainful activity levels. *See id.* § 404.1560(b)(1). The step-four inquiry thus did not require the ALJ to assess Schwandt's ability to work additional hours to reach substantial gainful activity levels from 2012 onward.

Citing *Carter v. Sullivan*, 909 F.2d 1201 (8th Cir. 1990) (per curiam), Schwandt next argues that her two-hour standing restriction precluded a finding that she could perform her past "light work" as a dental hygienist. In *Carter*, we held that the claimant's inability to walk or stand off and on for six hours in an eight-hour workday precluded a finding that the claimant could perform his past "light" job as generally performed in the national economy. *See id.* at 1202. The standing restriction was dispositive because the job at issue required "a good deal of walking or standing." *See id.* (quoting 20 C.F.R. § 404.1567(b)).

Here, a vocational expert testified that the work of a dental hygienist is "light" because it requires constant use of hands and arms. This testimony was consistent with Schwandt's own report that her job mainly involved handling small objects and required walking for no more than two hours in an eight-hour workday. A two-hour standing restriction is not an absolute bar to performing "light work." *See Fenton v. Apfel*, 149 F.3d 907, 911 (8th Cir. 1998). The vocational expert answered affirmatively when the ALJ asked him whether someone with Schwandt's limitations—including the two-hour standing restriction—could perform Schwandt's past work as she actually performed it and as generally performed. The expert's answer supplied substantial evidence to support a determination that Schwandt could perform her past relevant work. *See Depover v. Barnhart*, 349 F.3d 563, 568 (8th Cir. 2003).

Schwandt urges that the ALJ's statement of her residual functional capacity to the vocational expert was incomplete. She suggests that the ALJ should have incorporated her claimed need for a recovery day after each work shift and the special work accommodations that she received starting in 2012. Schwandt's work accommodations included help from other employees in preparing her room and reviewing charts, assignments to "regular" patients, and reduced hours. The alleged need for a recovery day after each shift was based on Schwandt's testimony and a written statement from her husband. But Schwandt's medical records, her reported daily activities, her overall employment history, and the apparent effectiveness of her medications undermine the need for such accommodations. Substantial evidence supports the omission of these limitations from Schwandt's residual functional capacity.

\* \* \*

The judgment of the district court is affirmed.

_____